**Lois OLSHAN, Appellant**

v.

**TENET HEALTH SYSTEM CITY AVENUE, LLC. and Bala Imaging Center, P.C. and Stanley B. Steinberg, M.D. and Tenet Physicians Services and Tenet Health System Philadelphia, Inc. and Tenet Healthcare Corp., Appellees**

No. 1690 EDA 2003.

Superior Court of Pennsylvania.

Argued Feb. 3, 2004.
Filed April 22, 2004.
Reargument Denied June 23, 2004.

J. Craig Currie, Philadelphia, for appellant.

Michael E. McGilvery, Philadelphia, for Steinberg, appellee.

Jeffrey C. McElroy, Philadelphia, for Tenet Health System and Bala Imaging, appellees.

Before: KLEIN, McCAFFERY, and OLSZEWSKI, JJ.

KLEIN, J.:

¶ 1 Lois Olshan appeals from the order entered on April 10, 2003 in the Court of Common Pleas of Philadelphia County granting defendants' preliminary objections regarding venue and transferring the case to Montgomery County for trial. The underlying claim was that after a mammogram was taken and read in Montgomery County, a cancerous lesion was missed, resulting in a much more serious cancer when finally diagnosed. The corporate defendants in Philadelphia County were sued either because the Montgomery County physicians and facilities were agents of the Philadelphia corporate defendants or because of corporate liability in failing to retain competent physicians, inadequate rules and policies, and failure of supervision. Since all the *medical care* was "furnished" to the patient in Montgomery County, we hold that the cause of action *arose* in Montgomery County and under the new venue rule and statute, venue is not proper in Philadelphia County. Therefore, we affirm.

History

¶ 2 In June 2000, Olshan visited Bala Imaging Center and Stanley Steinberg, M.D. to obtain a mammogram. Bala Imaging is located in Montgomery County. Olshan now claims Dr. Steinberg negligently failed to detect a cancerous mass in her breast. The mass was detected later by which time the cancerous lesion had metastasized to her axillary lymph nodes. This delay in diagnosis has allegedly resulted in a more extensive and deleterious course of treatment and caused a significant reduction in her chances for survival.

¶ 3 Lois Olshan received no treatment in Philadelphia County, but only in Montgomery County. While background activities, such as hiring the physicians, training the staff, and establishing rules might have occurred in Philadelphia, nothing directly involving patient care took place in Philadelphia. Had Dr. Steinberg not encountered Olshan in Montgomery County, there would be no cause of action for this patient, no matter the hiring practices or training in Philadelphia.

¶ 4 Olshan has also alleged Bala Imaging was owned and/or operated by one or all of the corporate defendants: Tenet Health System City Avenue, LLC; Tenet Physicians Services; Tenet Health Systems Philadelphia, Inc.; and Tenet Healthcare Corp. Olshan alleges that Dr. Steinberg acted as an agent or ostensible agent of these corporate defendants. The allegations against the corporate defendants include the systematic or administrative negligence in: 1) failing to retain only competent physicians; 2) failing to formulate, adopt and enforce adequate rules and policies to ensure quality care; and 3) failing to oversee the activities of its agents, servants, employees and/or ostensible agents.

¶ 5 All of the corporate defendants, with the exception of Tenet Healthcare Corp., have their primary places of business in Philadelphia County.[1] The preliminary objections to venue were filed pursuant to Pa.R.C.P. 1006(a.1), which specifically governs venue for medical professional liability claims. Appellees argued Montgomery County was the proper venue because that was where the cause of action, failure to diagnose, allegedly occurred. The trial court agreed and transferred the case to Montgomery County.

Discussion

With the facts in mind, we look to the Rules of Civil Procedure.

1. Tenet Healthcare Corp. is from Santa Barbara, California.

### 1. Definitional clauses

■ ¶ 6 The rules for venue for a medical negligence action are found at Pa. R.C.P. 1006. The rules were amended along with the statutory changes embodied in the MCARE Act, to go into effect concurrently with the MCARE Act and reflect the same intent as the General Assembly.[2] The venue rules refer back to specific sections of MCARE for both definitions and general rules. Thus, the Supreme Court, which has the sole responsibility for the promulgation of rules regarding venue, has adopted the same rules as promulgated by the General Assembly.

> Except as otherwise provided by subdivision (c), a medical professional liability action may be brought against a health care provider for a medical professional liability claim only in a county in which the cause of action arose.

Pennsylvania Rule of Civil Procedure 1006(a.1).

¶ 7 To see whether a "cause of action arose" in Philadelphia, the Rules of Civil Procedure refer us to the definitional section of a "medical professional liability action." That is defined as any action where a "medical professional liability claim" is made, so that phrase becomes the operative language. The definition of "medical professional liability claim" is found in 42 Pa.C.S.A. § 5101.1(c):

> "**Medical professional liability claim.**" Any claim seeking the recovery of damages or loss from a health care provider arising out of any tort or breach of contract causing injury or death resulting from the **furnishing** of health care services which were or should have been provided. (Emphasis supplied.)

¶ 8 Nothing was "furnished" to this patient in Philadelphia. All of her treatment (health care services) took place in Montgomery County. Therefore, whether or not Tenet is considered a "health care provider" for purposes of this suit, no health care services were furnished in Philadelphia.

¶ 9 It certainly is true that in many circumstances a hospital is a health care provider and can be subject to liability both on a vicarious liability basis and on a corporate negligence basis. However, to create venue, it is not the county where the corporate action took place that determines venue, but the county where the action affected the patient. That is where the care was "furnished." For example, if a hospital pharmacy in Philadelphia mislabeled a drug in Philadelphia by putting it into the wrong vials when repacking it for administration to patients, and a patient in a Montgomery County received the drug, certainly the hospital would be liable as a health care provider. However, since the drug was *furnished* to the patient in Montgomery County, venue would not be proper in Philadelphia. Likewise, an x-ray taken and read in Montgomery County by a staff radiologist employed by a Philadelphia hospital and paid out of the Philadelphia office would be an act of the Philadelphia hospital as health care provider but still would not create venue in Philadelphia.[3]

---

**2.** Medical Care Availability and Reduction of Error (MCARE) Act, 40 P.S. §§ 1303.101, et seq. This act reformulates many rules and procedures regarding the provision of medical care and medical negligence lawsuits. In addition to those sections found in Title 40, MCARE also amends various sections of Titles 35 and 42.

**3.** We give no opinion as to where the health care services would be furnished if the radiographic studies (or the like) are taken in one county and read in another, as those facts are not before us.

¶ 10 Moreover, in this case, the "health care services" that were provided to the patient were taking and reading a mammogram, not hiring, supervising, or providing rules and regulations for staff. Although "health care services" are not defined in the statute, we may look to other sources for guidance. Pennsylvania statues are replete with references to "health care services." [4] For example: 40 P.S. § 1553 defines "basic health services" as those health services, including, but not limited to, emergency care, inpatient hospital and physician care, ambulatory physician care, and outpatient and preventive medical services. "Primary health care services" is defined in 35 P.S. § 449.43 as including, but not limited to, regular checkups, immunizations, school physicals, health educations, prenatal and obstetrical care, early periodic screening and diagnostic testing and health education. Similarly, 23 Pa.C.S. § 4326 defines "health care coverage" as coverage for medical, dental, optical, psychological, psychiatric or other health care services for a child. These definitions clearly indicate the General Assembly considers health care services to be those services provided directly to a patient.

¶ 11 Finally, 40 P.S. § 1303.302, a section concerning patient safety and found in the MCARE Act itself, defines both "incident" and "serious event" in terms of an event that requires the delivery of "additional health care services" to the patient. Clearly these definitions do not refer to any administrative acts performed by a corporate entity, such as hiring physicians, drafting rules and regulations, and supervising staff. They apply to the actual delivery of treatment to a patient by a licensed professional.

■ ¶ 12 Of course, these examples are from other statutes and do not directly answer the question before us. However, they help demonstrate what common sense and the plain meaning of the words require: that "health care services" relates to medical care and directly related activities. They do not apply to ancillary services, such as hiring physicians, drafting rules, or supervising and reviewing the work of health care professionals.

¶ 13 We believe a fair reading of the statute leads to the conclusion that the "health care services" provided to Lois Olshan were the taking and reading of a mammogram in Montgomery County, and all such services were "furnished" in Montgomery County. The indirect administrative activities in Philadelphia are not furnishing of medical services to Ms. Olshan which would create Philadelphia venue.

## 2. Legislative intent.

¶ 14 It is not necessary to look to the Comment to the statute or to the legislative history to determine the intent of the legislature in drafting definitions for the new venue rules. The General Assembly has clearly stated its intent to change the venue requirements in the act, not once, but twice:

In accordance with section 514(a) of the act of March 20, 2002 (P.L. 154, No. 13), known as the Medical Care Availability and Reduction of Error (MCARE) Act, and as a matter of public policy, the General Assembly further declares the need to change the venue requirements for medical professional liability actions.

42 Pa.C.S. § 5101.1(a). Declaration of policy.

¶ 15 Also:

The General Assembly further recognizes that recent changes in the health care delivery system have necessitated a revamping of the corporate structure for

---

4. While it is certainly true that similar or identical phrases may mean different things in different statutes, the uniformity of the use of "health care services" is instructive to the meaning of that phrase here, but not binding.

various medical facilities and hospitals across this Commonwealth. This has unduly expanded the reach and scope of existing venue rules. Training of new physicians in many geographic regions has also been severely restricted by the resultant expansion of venue applicability rules. These physicians and health care institutions are essential to maintaining the high quality of health care that our citizens have come to expect. 40 P.S. § 1303.514(a). Declaration of policy.

¶ 16 The rules of statutory construction make it clear that "the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). With these two declarations of policy the General Assembly has unambiguously stated its intention. The General Assembly has stated that it has recognized that health care in the Commonwealth was becoming controlled by larger entities such as Tenet Health Systems, the University of Pennsylvania, Thomas Jefferson University, Einstein Hospital, the University of Pittsburgh Medical Center, and West Penn Allegheny Health System. As a result of this, any health care provider affiliated with any of these larger corporate entities became fair game to be sued in Philadelphia or Pittsburgh, where the vast majority of corporate entities have their main location or conduct a large amount of business. The result of has been an "unduly expanded" reach and scope of venue. And since these two sections are unambiguous, it is hornbook law that we cannot resort to extraneous matters to rewrite the statute.

¶ 17 The new venue rules provided in section 5101.1 and Pa.R.C.P. 1006 sought to alleviate this situation by limiting venue to the location of the alleged negligent care. However, Appellant's proposed interpretation of the new venue rules would result in almost no change at all. As demonstrated by the scenario before us, simply by alleging some form of corporate negligence, unrelated to the actual provision of health care services, the venue rules are circumvented and the doctor, in this case practicing in Montgomery County, once again finds himself a defendant in Philadelphia County. The Appellant's proposed interpretation represents not so much a loophole in the venue rules, but a tunnel, wide enough for a truck to drive through.

¶ 18 Finally, we note that in conjunction with the new MCARE rules, our Supreme Court has added Pa.R.C.P. 1042.3, requiring a certificate of merit to be filed "in any action based upon an allegation that a licensed professional deviated from an acceptable professional standard within 60 days of the filing of the complaint." This certificate is basically a statement from an appropriately licensed professional that the licensed professional in question (be it doctor, nurse, chiropractor, etc.) has provided substandard treatment.

¶ 19 However, no such certificate is required for allegations made against the hospital or other corporate entity. We believe this further supports the notion that it is the site of the alleged negligent treatment that is the driving force behind the changes found in MCARE. It makes little sense to provide a licensed professional with the procedural protection of a certificate of merit and the change in venue rules, only to have those protections short circuited by allowing a plaintiff to change venue by making a bald allegation against a corporate defendant that need not be backed up by any prior certification.

¶ 20 Based on the foregoing, we affirm the transfer of venue to Montgomery County. Order affirmed.

¶ 21 OLSZEWSKI, J., files a Dissenting Opinion.

OLSZEWSKI, J., Dissenting.

¶ 1 I must respectfully dissent from the majority opinion. The majority looks directly to the legislative intent in defining a medical provider liability claim to exclude its application to the corporate defendants (Tenet) in this case. This conclusion, however, ignores the plain meaning of the words in the statutes and rules governing a medical provider liability claim.

¶ 2 On appeal, appellant contends that the trial court misapplied Pa.R.C.P. 1006(a.1) when it found that her claims against Tenet did not include a medical provider liability claim and were not amenable to suit in Philadelphia County.

¶ 3 The relevant parts of Rule 1006[5] provide:

(a): Except as otherwise provided by subdivisions (a.1), (b) and (c) of this rule, an action against an individual may be brought in and only in a county in which the individual may be served or in which the cause of action arose or where a transaction or occurrence took place out of which the cause of action arose or in any other county authorized by law.

(a.1): Except as otherwise provided by subdivision (c), a medical professional liability action may be brought against a health care provider for a medical professional liability claim only in a county in which the cause of action arose.

Note: See Section 5101.1(c) of the Judicial Code, 42 Pa.C.S. § 5101.1(c) for the definitions of "health care provider", "medical professional liability action" and "medical professional liability claim".

(c)(1): Except as otherwise provided by paragraph (2), an action to enforce a joint or joint and several liability against two or more defendants, except actions

in which the Commonwealth is a party defendant, may be brought against all defendants in any county in which the venue may be laid against any one of the defendants under the general rules of subdivisions (a) or (b).

(c)(2): If the action to enforce a joint or joint and several liability against two or more defendants includes one or more medical professional liability claims, the action shall be brought in any county in which the venue may be laid against any defendant under subdivision (a.1).

¶ 4 Under the general venue rule, a plaintiff can bring a lawsuit against a single defendant in the county where the defendant may be served, where the cause of action arose, or where a transaction or occurrence took place out of which the cause of action arose. Rule 1006(a.1), however, limits the general venue rule in medical provider liability actions. Under the subsection (a.1), a plaintiff can only bring a medical provider liability claim in the county where the alleged cause of action arose.

¶ 5 When there are multiple defendants in the lawsuit, the rule is similar. Generally, in actions where there is more than one defendant, and the plaintiff seeks joint or joint and several liability, the plaintiff's choice of venue can be where any one defendant may be served, where the cause of action arose, or where a transaction or occurrence took place out of which the cause of action arose. Subsection (c)(2), however, limits the general rule for multiple defendants if any part of the plaintiff's lawsuit includes a medical provider liability claim. If a medical provider liability claim arose in one county, but the plaintiff also has a non-medical provider liability claim that arose in another county, venue is only proper in the county where the medical

5. The venue rules for a corporation fall under Pa.R.C.P. 2179. The recent amendments to Rule 1006, however, are also applicable to corporations with regard to medical provider liability actions. *See* Note and Explanatory Comment—2003 to Pa.R.C.P. 2179.

provider liability claim arose. But if there is more than one medical provider liability claim, and two or more of the claims arose in different counties, then the plaintiff can bring her lawsuit in any county where a medical provider liability claim arose.

¶ 6 There is no dispute that appellant's claim against Dr. Steinberg is a medical provider liability claim. Accordingly, the proper venue for that claim is Montgomery County because that is the place where the cause of action arose. The only way for venue to be proper in Philadelphia County is if appellant's claims against Tenet also include: (1) a medical provider liability claim that (2) arises out of Philadelphia County.

¶ 7 A "medical provider liability claim" is defined as: "Any claim seeking the recovery of damages or loss from a health care provider arising out of any tort or breach of contract causing injury or death resulting from the furnishing of health care services which were or should have been provided." 42 Pa.C.S.A. § 5101.1(c).

¶ 8 The majority agrees that Tenet is a "health care provider". It has determined, however, that none of appellant's claims against Tenet can be considered a medical provider liability claim because Tenet did not "furnish health care services" to appellant in Philadelphia. The majority's exclusion of all administrative acts performed by corporate entities, "such as hiring physicians, drafting rules and regulations, and supervising staff," from the definition of "health care services" is incorrect and not supported by the statutory language used by the General Assembly and adopted by the Pennsylvania Supreme Court.

¶ 9 "Health care services" cannot be limited to actual medical care rendered. In 42 Pa.C.S.A. § 5101.1(c), which is the same statute that defines "medical provider liability claim", a "health care *provider*" is defined as:

... a person, **including a corporation** ... licensed or approved by the Commonwealth to provide health care or professional medical services as a physician, a certified nurse midwife, a podiatrist, **hospital**, nursing home, birth center, **and an officer, employee or agent of any of them** acting in course and scope of employment. (Emphasis added).

Clearly, a corporation can be a health care provider. The majority admits as much. How then, can a corporation be precluded from furnishing health care services? The majority's limitation of "health care services" to "actual medical care" conflicts with the definition of "health care provider", as a corporation cannot give a patient a check-up, deliver a baby, or prescribe medicine. Administrative acts must be included in the definition of "health care services." Otherwise, corporations and officers of corporations would have nothing to provide as health care providers.

¶ 10 Our case law supports the fact that administrative acts must be considered "health care services." In *Edwards v. Brandywine Hospital*, 438 Pa.Super. 673, 652 A.2d 1382 (1995), this Court found that a corporate hospital could be liable in a medical liability claim. We noted that hospitals have the following duties: (1) to use reasonable care in maintaining safe and adequate facilities and equipment; (2) to choose and retain competent physicians; (3) to oversee persons who practice medicine within its walls as to patient care; and (4) to formulate, adopt and enforce adequate rules and policies to ensure quality care for its patients. *Edwards*, 652 A.2d at 1386.

¶ 11 These duties include the administrative acts the majority excludes from the definition of health care services, and they are the same duties that appellant has alleged Tenet breached. *See* Plaintiff's

Complaint, at 3, 4, 6 and 7. Simple logic dictates that if corporate entities can be considered health care providers, then they must also be able to furnish health care services. Accordingly, I would find that appellant's claims against Tenet include medical provider liability claims.

¶ 12 The majority also claims that Tenet did not "furnish" anything to appellant in Philadelphia. Tenet, however, *may or may not* have provided health care services to appellant in Philadelphia County. The trial court stated that even if it considered appellant's claim against Tenet to be a medical provider liability claim, "[t]his Court can not conclude that this deviation of [Tenet] did not occur at the very facility where the malpractice occurred, and where Dr. Steinberg was practicing, in Montgomery County." Trial Court Opinion, 8/6/2003, at 2–3.

¶ 13 While the trial court's observation may be true, it is more important that **there is no evidence in the record that the alleged deviation by Tenet did not occur in Philadelphia County**. It is well settled that a plaintiff does not bear the burden of showing that venue is proper towards a defendant; rather, a defendant has the burden of showing that the plaintiff's choice of venue is improper towards him. *See Purcell v. Bryn Mawr Hospital,* 525 Pa. 237, 579 A.2d 1282, 1284 (1990).

¶ 14 Through his preliminary objections, Dr. Steinberg established that venue in Philadelphia was improper as to him because the alleged medical provider liability claim *against him* arose in Montgomery County. The preliminary objections, however, did not establish that the alleged medical provider liability claims against Tenet arose in Montgomery County. In fact, the trial court explicitly states that it cannot conclude that the causes of action against Tenet arose in Montgomery County. Accordingly, the trial court should have affirmed Philadelphia County as appellant's choice of venue because Tenet failed to prove that the cause of actions against it did not arise there.

¶ 15 Based on the foregoing, I would conclude that the trial court erred when it transferred venue to Montgomery County.

¶ 16 I, therefore, respectfully dissent.