J. A19001/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| STEVEN FRIEDMAN, MD, | : | IN THE SUPERIOR COURT OF |
| INDIVIDUALLY AND AS EXECUTOR OF | : | PENNSYLVANIA |
| THE ESTATE OF GAIL FRIEDMAN, | : | |
| DECEASED, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| DEVON MANOR AND | : | No. 2707 EDA 2015 |
| HEARTLAND PHARMACY OF PA LLC, | : | |
| AND HCR MANOR CARE, INC. | : | |

Appeal from the Order Entered July 22, 2015,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. November Term, 2014 No. 01684

BEFORE:  FORD ELLIOTT, P.J.E., OTT AND FITZGERALD,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED OCTOBER 12, 2016**

Steven Friedman, M.D., appeals, ***pro se***,[1] from the order of July 22, 2015, granting defendants/appellees' motion to transfer this matter to Chester County on the ground that venue in Philadelphia County was improper.  After careful review, we affirm.

The trial court has summarized the history of this case as follows:

> [Appellant] is a resident of Newtown Square, Pennsylvania, in Delaware County.  Fourth Amended Complaint, at ¶ 1.  Defendants Devon Manor and

---

* Former Justice specially assigned to the Superior Court.

[1] Appellant is a board-certified doctor of internal medicine and also an attorney.  (Appellant's brief at 5.)

[HCR] Manor Care (Manor Care) operate a skilled nursing facility located in Chester County. Defendant Heartland Pharmacy of PA, LLC (Heartland), is Devon Manor's off-site pharmacy and is located in Allentown, Pennsylvania, in Lehigh County. *Id.* at ¶¶ 3-5. [Appellant]'s nineteen-count complaint advances tort claims on his own behalf and medical negligence claims on behalf of the estate of his wife, Gail Friedman (Mrs. Friedman).

[Appellant]'s complaint, filed originally in November 2014, alleges that [appellant]'s wife was admitted to Devon Manor on November 16, 2012, for post-hospitalization rehabilitation. *Id.* at 25. She was discharged on January 5, 2013. *Id.* [Appellant], Board-certified in Internal Medicine, was a member of Devon Manor's staff and was Mrs. Friedman's only attending physician. *Id.* at ¶¶ 22-23. On or about November 16, 2012, [appellant] ordered a medication called Miralax for bowel regulation. *Id.* at ¶¶ 37-38. He alleges that unbeknownst to him defendants ordered and administrated Mirapex (instead of Miralax) which was delivered in a mislabeled container. *Id.* at ¶¶ 39-41. Mirapex is the brand name for "generic pramipexole, a medicine used for treating the signs and symptoms of idiopathic Parkinson's disease and moderate-to-severe primary Restless Legs Syndrome." *Id.* at ¶ 42. It is not indicated for bowel regulation. *Id.* [Appellant] alleges that the Mirapex worsened or accelerated Mrs. Friedman's Lewy Body Disease (LBD), a condition consistent with her clinical diagnosis of Gaucher-related Parkinsonism. *Id.* at ¶¶ 44, 58. He alleges that the medication error hastened her death. *Id.* at ¶ 114. He alleges further that the defendants sought to dissuade him from taking action against them and otherwise acted to conceal their mistake. *Id.* at ¶¶ 66, 71-72, 78-82, 86-90, 91-99. Mrs. Friedman died on October 31, 2014, never having recovered from the adverse effects of the Mirapex. *Id.* at ¶¶ 110-118.

[Appellant]'s complaint also advances claim[s] on his own behalf. He asserts claims of negligent

and intentional infliction of emotional distress stemming from the impact on him of discovering the medical error and, upon his own research, learning of the harmful and irreversible effects of Mirapex on his wife. *Id.* at ¶¶ [sic]. Specifically, he alleges that he was the primary person responsible for all of Mrs. Friedman's care, on a 24-hour basis and "**wherever he was**." *Id.* at ¶ 22, 24 (emphasis in original). He alleges that it was foreseeable that he, as Mrs. Friedman's personal physician and husband, would "**sometime and someplace**" learn of defendants' negligence and that he would, "**at that time and place**, become emotionally distressed." *Id.* at 29-30 (emphasis added). When he learned that Mrs. Friedman was receiving Mirapex instead of Miralax, [appellant] went to the Scott Memorial Library of Thomas Jefferson University in Philadelphia. *Id.* at ¶ 60. It was there, at the library that [appellant] "suddenly and without warning became emotionally distressed" upon learning that Mirapex could cause and did cause significant and irreversible harm to his wife's nervous system. *Id.* at ¶¶ 62-64, 69, 76, 84. His emotional distress was aggravated by the overwhelming sense of guilt and inadequacy he experienced because he was his wife's physician. *Id.* at ¶ 65. He alleges that as a result of the defendants' negligence he was himself hospitalized for stroke on May 31, 2013. He also experienced aggravated distress when witnessing defendants' on-going negligence regarding his wife while they both were admitted for care at Devon Manor from June of 2013 until August 12, 2013, when they were both discharged. *Id.* at ¶¶ 126-30, 136.

Trial court opinion, 1/5/16 at 1-3 (footnote omitted; emphasis in original).

On July 22, 2015, the trial court granted appellees' motion for change of venue and transferred the case to Chester County. This timely appeal

followed.[2]    Appellant has complied with Pa.R.A.P., Rule 1925(b),

42 Pa.C.S.A., and the trial court has filed a Rule 1925(a) opinion.

Appellant has raised the following issue for this court's review:

> Did the Court of Common Pleas err in changing the
> venue from Philadelphia, where [appellant], as
> a [sic] individual, suffered emotional distress in
> learning that his wife and patient had been given the
> wrong medicine?

Appellant's brief at 4.

> If there is any basis to affirm a trial court's decision
> to transfer venue, the decision must stand.
> Moreover, the standard of review is one of abuse of
> discretion.  An abuse of discretion is shown by a
> record of misapplication of the law, or judgment that
> is manifestly unreasonable, or motivated by
> partiality, prejudice, bias, or ill-will.

*Peters v. Sidorov*, 855 A.2d 894, 896 (Pa.Super. 2004), quoting *Kring v.*

*Univ. of Pittsburgh*, 829 A.2d 673, 675 (Pa.Super. 2003), *appeal denied*,

844 A.2d 553 (Pa. 2004) (citations omitted).

Although Mrs. Friedman was allegedly administered the wrong

medication in Chester County, appellant claims that venue is proper in

Philadelphia County because that is where he learned of the mistake.

According to appellant, "the cause of action arose in Philadelphia County,

with the emotional intensity of his *sudden discovery* that the perversion of

---

[2] Although interlocutory in nature, the order transferring the action to Chester County is appealable as of right pursuant to Pa.R.A.P. 311(c). *Vogel v. Nat'l R.R. Passenger Corp.*, 536 A.2d 422, 424 n.3 (Pa.Super. 1988).

his medical orders was causing his wife and patient, Gail Friedman's medical

deterioration." (Appellant's brief at 12 (emphasis in original).) We disagree.

> The rules for venue for a medical negligence action are found at Pa.R.C.P. 1006. The rules were amended along with the statutory changes embodied in the MCARE Act, to go into effect concurrently with the MCARE Act and reflect the same intent as the General Assembly.[Footnote 2] The venue rules refer back to specific sections of MCARE for both definitions and general rules. Thus, the Supreme Court, which has the sole responsibility for the promulgation of rules regarding venue, has adopted the same rules as promulgated by the General Assembly.

> > Except as otherwise provided by subdivision (c), a medical professional liability action may be brought against a health care provider for a medical professional liability claim only in a county in which the cause of action arose.

> Pennsylvania Rule of Civil Procedure 1006(a.1).

> To see whether a "cause of action arose" in Philadelphia, the Rules of Civil Procedure refer us to the definitional section of a "medical professional liability action." That is defined as any action where a "medical professional liability claim" is made, so that phrase becomes the operative language. The definition of "medical professional liability claim" is found in 42 Pa.C.S.A. § 5101.1(c):

> > **"Medical professional liability claim."** Any claim seeking the recovery of damages or loss from a health care provider arising out of any tort or breach of contract causing injury or death resulting from the **furnishing** of health care services which were or should have been provided. (Emphasis supplied.)

[Footnote 2] Medical Care Availability and Reduction of Error (MCARE) Act, 40 P.S. §§ 1303.101, et seq. This act reformulates many rules and procedures regarding the provision of medical care and medical negligence lawsuits. In addition to those sections found in Title 40, MCARE also amends various sections of Titles 35 and 42.

*Olshan v. Tenet Health Sys. City Ave., LLC*, 849 A.2d 1214, 1216 (Pa.Super. 2004), *appeal denied*, 864 A.2d 530 (Pa. 2004). The MCARE Act defines "health care provider" as:

> A primary health care center or a person, including a corporation, university or other educational institution licensed or approved by the Commonwealth to provide health care or professional medical services as a physician, a certified nurse midwife, a podiatrist, hospital, nursing home, birth center and except, as to section 711(a), an officer, employee or agent of any of them acting in the course and scope of employment.

40 P.S. § 1303.103 (footnote omitted). It is not disputed that Devon Manor is a "health care provider" within the meaning of the MCARE Act.

In *Olshan*, the underlying claim was that after a mammogram was taken and read in Montgomery County, a cancerous lesion was overlooked, resulting in a much more serious cancer when ultimately diagnosed, and thereby reducing the plaintiff's chance for survival. The plaintiff initiated the action in Philadelphia County. The corporate defendants in Philadelphia County were sued either because the Montgomery County physicians and facilities were agents of the Philadelphia corporate defendants or because of

corporate liability in failing to retain competent physicians, inadequate rules and policies, and failure of supervision. **Olshan**, 849 A.2d at 1215.

This court held in **Olshan** that no health care services were "furnished" to the plaintiff in Philadelphia. All of her treatment took place in Montgomery County. **Id.** at 1216. Therefore, since all the medical care was "furnished" to the plaintiff in Montgomery County, the cause of action arose in Montgomery County and venue was not proper in Philadelphia County.

Similarly, here, although Heartland Pharmacy in Lehigh County supplied the drugs and HCR Manor Care in Ohio is the corporate parent of Devon Manor, the drugs were administered to Mrs. Friedman at Devon Manor in Chester County. Appellant alleges that the Devon Manor nurse who transmitted the medication order to Heartland Pharmacy mistakenly entered "Mirapex" into the computer system instead of "Miralax." (Appellant's brief at 8.) When the nurse received the container labeled "Mirapex," she simply assumed it must be a generic for Miralax. (**Id.**) Mrs. Friedman then ingested the allegedly mislabeled drugs in Chester County, and that is where the cause of action arose.[3] This court in **Olshan** described a similar scenario:

> For example, if a hospital pharmacy in Philadelphia mislabeled a drug in Philadelphia by putting it into the wrong vials when repacking it for administration

---

[3] Although appellant also alleges Heartland Pharmacy was negligent in not detecting Devon Manor's error, there is no allegation that the off-site pharmacy is a "health care provider" within the meaning of the MCARE Act or that it provided medical treatment to Mrs. Friedman.

> to patients, and a patient in a [sic] Montgomery County received the drug, certainly the hospital would be liable as a health care provider. However, since the drug was **furnished** to the patient in Montgomery County, venue would not be proper in Philadelphia.

***Olshan***, 849 A.2d at 1216 (emphasis in original).

Appellant argues that because he allegedly learned of the mistake at the medical library in Philadelphia while researching Mrs. Friedman's symptoms, suffering sudden and severe emotional trauma, venue is proper in Philadelphia.[4] The location where appellant purportedly learned that Mrs. Friedman was given Mirapex instead of Miralax is not controlling for venue purposes. As discussed above, the operative inquiry is where Mrs. Friedman was furnished medical treatment, which was at Devon Manor in Chester County. That is where she ingested the drugs and where the alleged injuries occurred. Furthermore, the fact that appellant asserted additional claims, including negligent and intentional infliction of emotional distress, does not change the calculus.

Pa.R.Civ.P. 1006(f)(2) and the comment provide:

> Except as otherwise provided by subdivision (c), if one or more of the causes of action stated against the same defendant is a medical professional liability claim, the action shall be brought in a county required by subdivision (a.1).

Pa.R.Civ.P. 1006(f)(2).

---

[4] Appellant also brought claims for loss of consortium, negligent infliction of emotional distress, and intentional infliction of emotional distress.

### *Multiple Causes of Action*

> Subdivision (f) of Rule 1006 provides that where more than one cause of action is asserted against the same defendant pursuant to Rule 1020(a), venue as to one cause of action constitutes venue as to all causes of action. In an action in which there are asserted multiple causes of action but only one is a claim for medical professional liability, the application of this provision could frustrate Section 5101.1 and result in an action being brought in a county other than the county in which the cause of action for medical professional liability arose. New subdivision (f)(2) limits venue in such cases to the county required by new subdivision (a.1), e.g., the county in which the cause of action for medical professional liability arose.

Pa.R.Civ.P. 1006, EXPLANATORY COMMENT--JAN. 27, 2003.

For these reasons, the trial court did not abuse its discretion in granting appellees' motion to transfer where venue clearly lay in Chester County, as that is where the cause of action arose.[5]

---

[5] As described above, appellant brought numerous claims against three different defendants including Heartland Pharmacy based in Lehigh County. However, Rule 1006 is clear that where one of the defendants is a health care provider (Devon Manor), venue is only proper in the county where that defendant provided treatment (Chester). **See** Pa.R.Civ.P. 1006(c)(2) ("If the action to enforce a joint or joint and several liability against two or more defendants includes one or more medical professional liability claims, the action shall be brought in any county in which the venue may be laid against any defendant under subdivision (a.1)."); **see also** EXPLANATORY COMMENT--JAN. 27, 2003 ("[S]ubdivision (c)(2) does not allow an action to enforce a joint and several liability to be brought against a health care provider in a county in which venue may be laid against a defendant that is not a health care provider. Therefore, an action to enforce a joint and several liability against Health Care Provider A that provided treatment in County 1 and against a product manufacturer that does business in County 2 may be brought only in County 1.").

Finally, we briefly address appellees Devon Manor and HCR Manor Care's request for counsel fees under Pa.R.A.P. 2744.[6]  Appellees insist that the instant appeal is frivolous, without any basis in law or fact, and that they are entitled to reasonable attorneys' fees.

> Our Court may award a reasonable counsel fee and damages for delay if we determine that an appeal is:
>
> > . . . frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious.  The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.
>
> Pa.R.A.P. 2744.  Moreover, an appeal is "frivolous" if the appellate court determines that the appeal lacks any basis in law or in fact.

***Gargano v. Terminix Intern. Co., L.P.***, 784 A.2d 188, 195 (Pa.Super. 2001), citing ***Thunberg v. Strause***, 682 A.2d 295, 302 (Pa. 1996).

> In determining the propriety of such an award, we are ever guided by the principle that an appeal is not frivolous simply because it lacks merit.  Rather, it must be found that the appeal has no basis in law or fact.  This high standard is imposed in order to avoid discouraging litigants from bringing appeals for fear of being wrongfully sanctioned.

***Griffith v. Kirsch***, 886 A.2d 249, 255-256 (Pa.Super. 2005), quoting

***Menna v. St. Agnes Medical Center***, 690 A.2d 299, 304 (Pa.Super. 1997)

(citations omitted).

---

[6] Appellee Heartland Pharmacy filed a separate brief and did not request counsel fees.

We find that while appellant's appeal lacks merit and the trial court did not err in transferring this case to Chester County, it is not wholly frivolous to a degree that attorneys' fees are warranted. Appellant does make the argument that as Mrs. Friedman's physician, he had a duty of care to his patient which was "interfered with and perverted" by Devon Manor's negligent acts. (Appellant's reply brief at 1-2.) He then argues that his particular cause of action arose in Philadelphia where he first perceived the nature of Mrs. Friedman's injuries. The argument is surely meritless but not necessarily without "any basis in law or fact." As such, we decline to grant attorneys' fees.

Order affirmed.[7]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2016

---

[7] Appellee Heartland Pharmacy devotes a significant portion of its brief to explaining why appellant's claims are without merit, particularly his claims for negligent and intentional infliction of emotional distress. (Heartland Pharmacy's brief at 12-15.) However, the merits of the underlying claims are not before this court for review on this interlocutory appeal from an order granting a change of venue.