J-A08039-17

2017 PA Super 233

| | | |
|---|---|---|
| MAXAMOR WENTZEL, A MINOR,  BY HIS PARENT AND NATURAL GUARDIAN  CHARISMA WENTZEL, AND CHARISMA WENTZEL, IN HER OWN RIGHT | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | No. 1159 EDA 2016 |
| DOMINIC CAMMARANO, III, D.O.; READING HEALTH PHYSICIAN NETWORK; READING OB/GYN, P.C., READING OB/GYN & WOMEN'S BIRTH CENTER, LLC; READING HOSPITAL; READING HEALTH SYSTEM; ALL ABOUT CHILDREN PEDIATRIC PARTNERS, P.C.; TENET HEALTH SYSTEM; ST. CHRISTOPHER'S HOSPITAL FOR CHILDREN, LLC; ST. CHRISTOPHER'S HOSPITAL FOR CHILDREN; HEART CENTER FOR CHILDREN AND ALLEGHENY INTEGRATED HEALTH GROUP | : : : : : : : : : : : : : : : : : : : | |
| APPEAL OF: CHARISMA WENTZEL, INDIVIDUALLY IN HER OWN RIGHT, AND AS PARENT AND NATURAL GUARDIAN OF MAXAMOR WENTZEL | : : : : | |

Appeal from the Order Entered March 24, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  No. 4185 August Term, 2015

BEFORE:   PANELLA, LAZARUS, JJ., and STEVENS, P.J.E.[*]

_____

[*] Former Justice specially assigned to the Superior Court.

OPINION BY STEVENS, P.J.E.:                    **FILED JULY 19, 2017**

Maximor Wentzel ("Maximor"), a minor, by his parent and natural guardian, Charisma Wentzel, and Charisma Wentzel in her own right ("Appellants"), appeal from the order entered in the Court of Common Pleas of Philadelphia County sustaining preliminary objections to venue and transferring the action to Berks County. We vacate the order and remand for proceedings consistent with this decision.

This medical malpractice action arises from, *inter alia*, the allegedly negligent failure of Philadelphia's St. Christopher's Hospital ("SCHC") and its resident cardiologist Dr. Lindsay Rogers to timely transmit her diagnosis and treatment plan for Maximor based on her reading of an emergency transthoracic echocardiogram performed on the premature newborn, who was receiving neonatal intensive care at Reading Hospital, Berks County. Dr. Rogers' diagnosis was pulmonary hypertension requiring immediate treatment or intervention, which she recommended SCHC should provide.

Appellants alleged in their complaint that the resultant one-day delay in putting Dr. Rogers' treatment plan into effect amounted to the negligent provision of health care services causing harm to Maximor. The trial court, however, sustained Appellees' preliminary objections to venue in Philadelphia County and transferred the matter to Berks County, as it rejected Appellants' argument that transmission of Dr. Rogers' impressions, diagnoses, and treatment plan for immediate transfer to SCHC constituted the furnishing of "health care services" as defined under both the MCARE

- 2 -

Act[1] and Pennsylvania Rules of Civil Procedure implementing such legislation. Instead, the court agreed with Appellees' position that Appellants' complaint was predicated on an allegation of mere clerical error falling outside the ambit of such controlling authority.

The trial court aptly provides a more detailed account of the case history pertinent to the issue before us:

> This matter was instituted by Complaint on September 1, 2015. [Appellants] brought this medical professional liability action against [Appellees], alleging professional liability claims against all Appellees, as well as direct corporate negligence claims as to the Reading facilities and St. Christopher's.
>
> Appellant, Christina Wentzel, underwent prenatal care with Dr. Cammarano and the Reading Appellees. See, Complaint at ¶ 28. Appellant's obstetrical history of having a prior child with Intrauterine Growth [Restriction] ("IUGR") and prior pre-term delivery at 32 weeks with low amniotic fluid was disclosed at the start of Appellant's treatment. ¶ 29. Appellant's initial prenatal appointment of May 9, 2013, noted Ms. Wentzel to be 17 5/7 weeks gestation per her last menstrual cycle. Appellant was given an estimated due date of October 12, 2013. ¶ 31.
>
> Appellee, Cammarano, performed a prenatal ultrasound at 20 6/7 weeks gestation (based upon Appellant's last menstrual period) which noted normal amniotic fluid and a calculated gestational age of 18 5/7 weeks. ¶ 33. No change was made to note the difference in Appellant's gestational age. ¶ 35. Dr. Cammarano performed prenatal ultrasounds again in July, 2013

---

[1] The Medical Care Availability and Reduction of Error ("MCARE") Act of March 20, 2002, P.L. 154, *as amended,* 40 P.S. § 1303.101–1303.910, replaced its predecessor, the Health Care Services Malpractice Act (Malpractice Act) of October 15, 1975, P.L. 390, No. 111 § 101 *et seq., as amended,* 40 P.S. § 1301.101 *et seq.*

and August, 2013. Each visit indicated a difference in her gestational age. ¶ 36-37. Appellant's next prenatal ultrasound on September 10, 2013, indicated a decreased amniotic fluid level, the fetus was in the breech position, and oligohydramnios was diagnosed. ¶ 40. Appellant was admitted to Reading Hospital for an emergency caesarean section delivery. ¶ 43.

Shortly after birth on September 10, 2013, the child was transferred to the Neonatal Intensive Care Unit ("NICU"). ¶ 48. The child continued to suffer from serious respiratory distress requiring intubation and ventilation treatment. ¶ 49-54.

On September 12, 2013, a transthoracic echocardiogram was performed at Reading Hospital at approximately 12:41 p.m. ¶ 56. The echocardiogram report was sent to Appellee, St. Christopher's for interpretation. ¶ 57. The report was interpreted and signed by Dr. Lindsay Rogers at St. Christopher's. The report was signed at 5:39 p.m. on September 12, 2013. ¶ 59. The report indicated pulmonary hypertension and tricuspid valve insufficiency requiring immediate treatment. ¶ 60.

The report was transmitted back to Reading Hospital from St. Christopher's on September 13, 2013, at 8:40 p.m. ¶ 62. At this point, the child had persistent pulmonary hypertension, and began receiving advanced respiratory treatments.

On September 14, 2013, the child was transported from Reading Hospital to St. Christopher's with [ ] final diagno[ses] of persistent pulmonary hypertension of newborn, respiratory distress [syndrome] and preterm infant. St. Christopher's noted the child to be symmetrically small for gestational age with feeding difficulties. ¶¶ 71, 73.

The child was transferred from St. Christopher's back to Reading Hospital on October 7, 2013, where he remained until November 18, 2013. ¶76. During this time, the child was noted to have serious respiratory issues, feeding difficulties, gastroesophageal reflux and failure to thrive. The child was again transferred from Reading Hospital to St. Christopher's on November 18, 2013. ¶¶ 77-78.

During the child's second admission to St. Christopher's, a CT scan revealed an old, healing rib fracture first seen on November

- 4 -

15, 2013, while the child was a patient at Reading Hospital. ¶ 80. Appellants allege the fracture could have occurred at Reading Hospital during the September 10 – September 14, 2013, stay; St. Christopher's during the September 14 – October 7, 2013, stay; or at Reading Hospital during the October 7 – November 18, 2013, stay. ¶ 81. The child was then transferred to Hershey Medical Center (not a party to this action) where he remained until May 13, 2014. ¶82.

The Reading Appellees filed Preliminary Objections to Appellants' Complaint raising, *inter alia*, improper venue pursuant to Pa.R.C.P. 1006(a.1).[] Specifically, Appellees argued the Appellants failed to raise any allegations of professional negligence stemming from medical care furnished to the child in Philadelphia County while at St. Christopher's. [The trial court] scheduled an argument and evidentiary hearing regarding the objection to venue, after which the Preliminary Objections were sustained, and this matter was transferred to Berks County. This appeal followed.

Trial Court Opinion, filed 8/18/16, at 1-4.

Appellant appealed and presents the following question for our review:

I. **DID THE TRIAL COURT ERR IN SUSTAINING THE PRELIMINARY OBJECTION OF DOMINIC CAMMARANO, III, D.O., READING HEALTH PHYSICIAN NETWORK, READING OB/GYN BIRTH & WOMEN'S CENTER, LLC, READING HOSPITAL AND READING HEALTH SYSTEM WITH REGARD TO VENUE AND TRANSFERRING THIS MATEER [SIC] TO BERKS COUNTY?**

Appellant's brief at 5.

It is well established that a trial court's decision to transfer venue will not be disturbed absent an abuse of discretion. A plaintiff's choice of forum is to be given great weight, and the burden is on the party challenging the choice to show it was improper. However, a plaintiff's choice of venue is not absolute or unassailable. Indeed, [i]f there exists any proper basis for the trial court's decision to grant a petition to transfer venue, the decision must stand.

***Jackson v. Laidlaw Transit, Inc. & Laidlaw Transit PA, Inc.***, 822 A.2d 56, 57 (Pa.Super.2003) (citations, quotation, and quotation marks omitted).

"Pennsylvania Rule of Civil Procedure 1006(a.1) provides that a medical professional liability action may be brought against a health care provider for a medical professional liability claim only in a county in which the cause of action arose, and the cause of action is deemed to have arisen where health care services are furnished." ***Cohen v. Furin***, 946 A.2d 125, 128 (Pa.Super. 2008). Furthermore, under the Judicial Code, a medical professional liability claim is "[a]ny claim seeking the recovery of damages or loss from a health care provider arising out of any tort or breach of contract causing injury or death resulting from the *furnishing of health care services* which were or should have been provided." 42 Pa.C.S.A. § 5101.1 (emphasis added).

In the case *sub judice*, the complaint alleged that affiliated defendants SCHC, Tenet, and Allegheny were liable under theories of vicarious liability and corporate negligence for the acts and omissions of Dr. Rogers and SCHC staff for failing to timely report her diagnosis, treatment plan, and recommendation to effect the immediate transfer Maximor to her care at SCHC.[2] This failure to timely transmit such vital information in a critical case

---

[2] Among the acts and omissions identified were:

> Failing to timely and/or properly transmit and/or report the
> results and/or interpretation of the September 12, 2013

*(Footnote Continued Next Page)*

- 6 -

where Reading Doctors were clearly awaiting her guidance, and the delay in treatment that resulted, were acts of professional negligence from which the cause of action arose, the complaint maintained, and such acts occurred in Philadelphia.

In their preliminary objections, however, Appellees argued first that the complaint alleged merely clerical or ministerial, rather than professional, negligence with respect to the actions of Dr. Rogers and the support staff of St. Christopher's, and the trial court agreed.

Herein, Appellants contend that the alleged negligence consists of the denial of health care services that should have been delivered to a patient in immediate need of such services. Such a denial transcends mere clerical negligence as found by the trial court, Appellants argue, as SCHC and the other named corporate affiliates denied Maximor necessary treatment when

*(Footnote Continued)* ─────────────

echocardiogram to the physicians at Defendant Reading Hospital;

Failing to timely and/or properly make treatment and/or transfer recommendations to the physicians at Defendant Reading Hospital based upon the September 12, 2013 echocardiogram; and

Failing to timely provide treatment and/or intervention, including medical therapies, ventilation therapies, and/or transfer to Defendant SCHC/Tenet/Allegheny, based upon the results of the September 12, 2013 echocardiogram.

***See*** Appellants' Complaint, filed 9/1/15, at ¶¶ 57-62, 129-30, 132-33, 136-37, 139-40.

their agents, Dr. Rogers and St. Christopher's Hospital staff, failed to deliver it as reasonably expected.

We agree that Appellants' complaint asserting both corporate and vicarious liability based on the omissions of Dr. Rogers and hospital staff puts forth a case of medical malpractice against Appellees. Indeed, in **Rostock v. Anzalone**, 904 A.2d 943 (Pa.Super. 2006), this Court held that a complaint accusing a medical care professional of failure to recommend appropriate work-up for a patient, to notify a patient of test results, or to maintain proper patient records made out allegations of professional, not clerical, failure, as such services strongly imply acts of diagnosis and/or treatment which may only be provided by a medical professional. **Id.** at 946. Even if the maintenance of patient records were largely clerical, we continued, the physician, "as the professional charged with supervising employees in a professional context, would be responsible for their derelictions under the doctrine of vicarious liability." **Id.** Relying on the same rationale expressed in **Rostock**, we reject the conclusion of the trial court that Appellants' complaint alleged merely clerical or ministerial negligence. The allegation of errors committed by Dr. Rogers and the support staff at St. Christopher's Hospital, causing delay in care to Maximor, sounded, instead, in medical malpractice.

Also underpinning the trial court's transfer of venue, however, was its conclusion that Dr. Rogers' alleged negligence occurring on September 12, 2013, occurred before Maximor was in her direct care in Philadelphia. **See**

Trial Court Opinion, at 11-12. According to the trial court, a triad of Superior Court decisions, **Cohen v. Furin**, 946 A.2d 125 (Pa.Super. 2008), **Bilotti –Kerrick v. St. Luke's Hospital**, 873 A.2d 728 (Pa. Super. 2005), and **Olshan v. Tenet Health System City Avenue**, **LLC**, 849 A.2d 1214 (Pa.Super. 2004), thus guided its decision to remove the case from Philadelphia County. We find the trial court's application of these cases to the present matter unpersuasive, as our jurisprudence expressed therein does not support transfer of venue as it occurred here.

In **Bilotti-Kerrick**, a patient was admitted to Northampton County's Pocono Medical Center with nausea and numbness in her arms. Doctors determined she needed immediate cardiac catheterization, which was not available at PMC. At 3:00 a.m., they contacted a cardiologist at his Northampton County home, and he directed them to have her at Lehigh County's St. Luke's Hospital at 6:00 a.m., where he said he would be waiting at the cardiac catheterization lab.

Patient was life-flighted to Lehigh County, but her delivery to St. Luke's critical care unit instead of the cardiac catheterization lab, coupled with the cardiologist's late arrival at 10:15 a.m., pushed back her catheterization until noon, six hours after the prescribed time. Two days and two emergency surgeries later, the patient died.

Plaintiffs filed suit in Northampton County, but the court sustained preliminary objections requesting transfer of venue to Lehigh County. This Court affirmed.

We held the cause of action, *i.e.*, "the negligent act or omission, as opposed to the injury which flows from the tortious conduct[,]" arose in Lehigh County. All claims of negligence were based on the delay in the performance of the cardiac catheterization at St. Luke's, Lehigh County. Although the cardiologist telephonically accepted the case, ordered transport of the patient, and arranged a catheterization time from his Northampton home, the essence of the claim is that he and other defendants committed oversights and errors in Lehigh County that caused the failure to furnish the patient with a timely catheterization that he should have received in Lehigh County.

Similarly, in the case *sub judice*, Appellants' complaint did not dispute that Dr. Rogers made an appropriate diagnosis and devised a suitable treatment plan calling for the immediate transfer of Appellant to her care. Instead, it alleged that she failed to furnish these services to Maximor as quickly as she, herself, opined was indicated because of her and her staff's negligent failure to put the plan into effect in a timely manner.

Just as the complaint in **Bilotti-Kerrick** alleged Lehigh County-based negligence was the cause of delayed implementation of an otherwise appropriate treatment plan, so, too, did Appellant's complaint charge Dr. Rogers and the staff of SCHC with failing to effect timely implementation of a treatment plan in Philadelphia County. In each case, the plaintiff sought venue in the county of the alleged negligent acts and omissions interfering with the intended provision of health care in that county. Contrary to the

trial court's opinion, therefore, we find ***Bilotti-Kerrick*** to support Appellant's position that venue was proper in Philadelphia.

Neither does our holding in ***Olshan*** support transfer in the present case. In ***Olshan***, Montgomery County physicians and facilities performed and misread plaintiff's mammogram. Plaintiff sued Philadelphia parent company in Philadelphia County, under theories of both vicarious and corporate liability. On the defendant's preliminary objections, the Court of Common Pleas of Philadelphia transferred venue to Montgomery County.

This Court affirmed, holding that venue depends upon where "health care services" were furnished to the patient. "Nothing was 'furnished' to [the] patient in Philadelphia. All of her treatment (health care services) took place in Montgomery County[,]" we observed. ***Id***. at 1216.

Notably, ***Olshan*** is factually distinguishable from the present matter, as the ***Olshan*** complaint did not allege that physicians negligently provided health care services in Philadelphia. Instead, the complaint alleged that physician negligence took place where both physician and patient were situated, in Montgomery County.[3]

_____

[3] The ***Olshan*** decision also set forth a hypothetical suggesting that the location where services are furnished is determined by the location of the patient, not the health care professional:

> For example, if a hospital pharmacy in Philadelphia mislabeled a drug in Philadelphia by putting it into the wrong vials when repacking it for administration to patients, and a patient in Montgomery County received the drug, . . . since the drug was

*(Footnote Continued Next Page)*

*Cohen*, too, militates against the trial court's transfer of venue. In *Cohen*, Plaintiff went into labor in Philadelphia and telephoned her midwife/nurse, who was also in Philadelphia. Midwife/Nurse advised plaintiff, whose pregnancy was categorized as "high risk," to cancel the ambulance she had requested and wait before going to Lankenau Hospital, Montgomery County. Plaintiff followed the midwife/nurse's advice and prolonged her time at home. By the time Plaintiff arrived at Lankenau, the midwife/nurse was unable to surmount the Plaintiff's complications, and Plaintiff's child died shortly after birth.

Plaintiff filed a medical malpractice action in Philadelphia County, but the court transferred venue to Montgomery County. We affirmed, holding that the midwife/nurse neither furnished nor intended to furnish medical care to Patient in Philadelphia, as telephonic advice alone was not the furnishing of healthcare services and did not create venue.

In reaching our holding, we drew a parallel to *Bilotti-Kerrick* in that the alleged negligent conduct consisted not in the giving of telephonic medical advice from a county in which there is no intention of providing

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

> *furnished* to the patient in Montgomery County, venue would not be proper in Philadelphia.

*Id*. at 1216 (emphasis in original). The hypothetical, however, is *dicta* to the extent that it involves a hospital pharmacy and a patient in different counties, whereas the mammogram in *Olshan* was both taken and interpreted in Montgomery County.

care, but, instead, in the "failure to treat the [patient] as [the provider] indicated he would." **Cohen**, 946 A.2d at 129 (quoting **Bilotti-Kerrick**, 873 A.2d at 731). The essence of Plaintiff's complaint in **Cohen** was that the midwife/nurse failed to provide the treatment as designed once Plaintiff arrived at Lankenau. It was these alleged acts of medical negligence, we reasoned, that made venue proper in Montgomery County, as "all of the care that was provided, *or not provided*, occurred in Montgomery County, and thus that is where venue is properly placed." **Id**. (emphasis added).

Consistent with the **Cohen** rationale, Appellants' complaint alleged that Dr. Rogers and SCHC had every intention of providing care for Maximor in Philadelphia, and that their negligent delay in effecting the treatment plan represented a failure to treat him immediately as Dr. Rogers deemed crucial. As such, all the timely care that was allegedly not provided in the case *sub judice* occurred in Philadelphia County. **Cohen**, therefore, offers no support for venue in Berks County.

Our decision in **Peters v. Sidorov**, 855 A.2d 894 (Pa.Super. 2004), a case not relied upon by the trial court, further supports Appellants' choice of venue. In **Peters**, we held that venue was proper in the county where a doctor prescribed prednisone to a patient during an appointment, and not where the patient later filled the prescription and suffered an allergic reaction upon taking a prescribed dose. As such, **Peters** focused the proper inquiry on the locus of the negligent act rather than the locus of the patient's resultant injury. While **Peters** differs from the case *sub judice* insofar as the

physician and patient were in the same location at the time the doctor prescribed prednisone, its holding nevertheless centers on the location of the physician's negligent act in assessing where the cause of action arose under Rule 1006(a.1).

In summary, the essence of Appellant's complaint was that Dr. Rogers and SCHC failed to furnish Maximor, whom they intended to treat upon his immediate transfer to SCHC, with the timely care Dr. Rogers indicated he should receive at SCHC. As described, Dr. Rogers' involvement in Maxamor's case transcended the mere offer of advice from a remote location. She was, instead, expected to direct Maximor's course of care, and she clearly commenced in that role with her report. Like in **Bilotti** and **Cohen**, the complaint alleged negligent acts in Philadelphia that deprived Maximor of the health care services Dr. Rogers indicated he should have in Philadelphia at a critical time in his case.

Because the trial court's rationale for transferring venue to Berks County was flawed, therefore, we vacate the order transferring venue and reinstate venue in Philadelphia County.

Order vacated. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

Judge Panella joins the Opinion.

Judge Lazarus files a concurring statement.

- 14 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/2017