J-S34001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MICHAEL ALESSIO | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| I-FLOW CORPORATION, A/K/A I-FLOW, LLC, KIMBERLY-CLARK, A/K/A KIMBERLY-CLARK CORPORATION, SETH R. KRUM, D.O., PENNSYLVANIA ORTHOPEDIC ASSOCIATES, INC., RICHARD STRULSON, M.D. | |
| | No. 1469 EDA 2016 |

Appeal from the Order Entered April 5, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 04202 March Term, 2015

BEFORE:  BOWES, SOLANO, AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                 **FILED NOVEMBER 28, 2017**

Michael Alessio appeals from the order entered in the Court of Common Pleas of Philadelphia County sustaining preliminary objections to venue and transferring the action to Montgomery County.[1]  We reverse and remand.

This matter commenced on April 1, 2015, when Appellant filed a complaint against Appellees raising claims sounding in medical malpractice

_____

[1] Our exercise of jurisdiction over this appeal is predicated upon Pa.R.A.P. 311(c), governing interlocutory appeals as of right.

* Retired Senior Judge specially assigned to the Superior Court.

and products liability. As is relevant herein, Appellant averred that he sought and received medical treatment for an injured right shoulder in Philadelphia County with Dr. Richard Strulson, M.D. Dr. Strulson referred Appellant to Dr. Seth Krum, D.O., in Montgomery County for additional treatment when the pain persisted. Dr. Krum treated Appellant in Montgomery County, and ultimately, performed a surgical procedure to remedy Appellant's complaints.

As part of this procedure, Dr. Krum implanted an I-FLOW On-Q infusion pain pump into Appellant's right shoulder. This pump delivered pain medication directly into Appellant's shoulder joint during his recovery from surgery. Appellant alleged that the injection of anesthetics into his shoulder joint caused permanent damage to his cartilage, referred to as chondrolysis, which is a progressive degeneration of that cartilage. As such, he raised numerous claims, including allegations of medical malpractice against both Dr. Strulson and Dr. Krum.

On September 17, 2015, Dr. Krum filed preliminary objections contending, in part, that Appellant's complaint implicated medical treatment provided in Montgomery County, and thus, venue properly lay in that county. By order entered April 5, 2016, the trial court sustained Dr. Krum's preliminary objections and transferred the matter to Montgomery County. Appellant filed a timely notice of appeal to this Court. The trial court did not direct Appellant to file a Rule 1925(b) concise statement of errors

complained of on appeal. It did, however, author a Rule 1925(a) opinion, and this matter is now ready for our review.

Appellant raises two questions for our consideration:

I. Should the court's order filed on December 16, 2016 [sic] sustaining Defendant Krum's preliminary objections and transferring venue from Philadelphia to Montgomery County be vacated and this case remanded back to Philadelphia County?

II. As a matter of law, should the lower court have sustained [Appellant's] preliminary objections when same were filed well over three (3) months late?

Appellant's brief at 5 (unnecessary capitalization omitted).[2]

Our review of the trial court's decision to transfer venue is discretionary. *Wentzel by Wentzel v. Cammarano*, 2017 PA Super 233 (Pa. 2017) (citation omitted) at *3. In *Wentzel*, we observed:

A plaintiff's choice of forum is to be given great weight, and the burden is on the party challenging the choice to show it was improper. However, a plaintiff's choice of venue is not absolute or unassailable. Indeed, if there exists any proper basis for the trial court's decision to grant a petition to transfer venue, the decision must stand.

---

[2] In his statement of the case, Appellant includes the assertion that the trial court's decision to transfer this matter to Montgomery County is barred by the coordinate jurisdiction rule. As Appellant did not include this in his statement of questions presented, or develop his argument in the argument section of his brief, we find this issue waived. *R.L.P. v. R.F.M.*, 110 A.3d 201, 208-209 (Pa.Super. 2015) (finding arguments not properly developed are waived); *Morgante v. Morgante*, 119 A.3d 382, 396 (Pa.Super. 2015) (finding waiver where party failed to raise issue in statement of questions presented).

*Id*. (brackets and citation omitted).

Venue in a medical malpractice case is governed by Pa.R.C.P. 1006, which embodies the provisions contained with the Medical Care Availability and Reduction of Error ("MCARE") Act. *See* 42 Pa.C.S. § 5101.1. Rule 1006 reads, in pertinent part, "a medical professional liability action may be brought against a health care provider for a medical professional liability claim only in a county in which the cause of action arose." Pa.R.C.P. 1006(a.1). Further, "[i]f the action to enforce a joint or joint and several liability against two or more defendants includes one or more medical professional liability claims, the action shall be brought in any county in which the venue may be laid against any defendant under subdivision (a.1)." Pa.R.C.P. 1006(c)(2). A medical professional liability claim is defined as "[a]ny claim seeking recovery of damages or loss from a health care provider arising out of any tort or breach of contract causing injury or death resulting from the furnishing of health care services which were or should have been provided." 42 Pa.C.S. § 5101.1. Hence, a medical professional liability action may be brought against a health care provider only in a county in which health care services were furnished.

As noted above, Appellant raised claims against both Dr. Strulson and Dr. Krum. There is no dispute that Dr. Krum "furnished health care services" in Montgomery County to support the transfer of venue in Montgomery County pursuant to Rule 1006. However, Appellant argues that

- 4 -

venue was also proper in Philadelphia County under Pa.R.C.P. 1006(c)(2), as he avers that Dr. Strulson furnished health care services there. Appellees dispute that Appellant's claims against Dr. Strulson actually implicate venue in Philadelphia County, where Appellant originally brought this action.

With regard to the medical treatment provided by Dr. Strulson, Appellant alleged the following. Dr. Strulson provided the initial medical treatment of his shoulder in Philadelphia County and referred Appellant to Dr. Krum for additional treatment. Dr. Krum and Dr. Strulson regularly communicated with each other regarding this treatment, including the use of an I-FLOW pain pump following surgery. These facts supplied the basis for Appellant's complaint as follows:

72. The negligence of [Dr. Strulson] consisted of the following:

   a. failing to properly perform appropriate and precise routine monitoring of [Appellant].

   b. failing to properly advise and inform [Appellant] of the inherent risks, dangerous symptoms and side effects of the On-Q pain pump being place [sic] into the shoulder joint.

   c. failing to properly advise and inform [Appellant] of the inherent risks, dangerous symptoms and side effects of the On-Q pain pump being place [sic] into the shoulder joint that could severely effect [sic] his health.

   d. failing to provide necessary, adequate, and appropriate information to [Appellant] of the inherent risks, dangerous symptoms and side effects of the On-Q pain pump being place [sic] into the shoulder joint.

e. failing to properly supervise, monitor, and guide [Appellant] of the inherent risks, dangerous symptoms and side effects of the On-Q pain pump being place [sic] into the shoulder joint.

f. failing to exercise reasonable care in the determination of [Appellant's] medical condition and potential of problems by the continuous injection of anesthetics directly into any joint and that same can cause serious and permanent damage to the cartilage contained therein.

g. failing to exercise reasonable care in the determination that the anesthetic administered in such a fashion by the On-Q pain pump that kills the chondrocytes (cartilage cells) and causes cartilage to degenerate progressively (chondrolysis).

h. failing to recognize the availability of proper and adequate standards, protocol, and guidelines for the pain medication administration to [Appellant].

i. failing to properly instruct, educate, and inform [Appellant] that anesthetic administered in such a fashion will kill the chondrocytes (cartilage cells) and causes cartilage to degenerate progressively (chondrolysis).

j. in failing to refer [Appellant] to an appropriate orthopedic surgeon that would not perform surgery with non FDA approved equipment known to cause the death of chondrocytes (cartilage cells) and which causes cartilage to degenerate progressively (chondrolysis)

k. in failing to recognize that [Appellant] [sic] health was at risk and in failing to warn [Appellant] and his family of same;

l. in failing to recognize the need for special pain management treatment and care for [Appellant] versus the On-Q pain pump;

m. allowing [Appellant's] medication usage to remain unmonitored and allowing the pain pump to be used intra articularly causing cartilage to degenerate progressively (chondrolysis) when other medications for pain were available and more suitable;

n. in that [Dr. Strulson] was not sufficiently qualified by experience, research, or educational background (when he should have been so) to adequately determine the compatibility of the On-Q pain pump usage in view of the potential risks and side effects of same.

q. in that [Dr. Strulson] permitted [Appellant] to undergo pain management in the manner he did causing cartilage to degenerate progressively (chondrolysis);[3]

r. failing to advise [Appellant] of the strong risk of chondrolysis;

s. failing to recognize, appreciate and advise [Appellant] of the risk of chondrolysis, and of simply advising him of more common pain medication for use.

73. As a direct and proximate result of [Dr. Strulson's] negligence, and [Dr. Strulson's] deviation from acceptable standards of care in the community, [Appellant] has sustained severe and permanent injuries, wage losses, medical expenses, loss of life's intangibles, emotional distress and mental anguish and other losses as more fully set forth hereinafter.

Complaint, 4/1/15, at ¶¶ 72-73.

Appellant contends that the trial court erred in transferring this matter to Montgomery County since his cause of action against Dr. Strulson arose in Philadelphia County. He asserts that, pursuant to **Peters v. Sidorov**, 855

_____

[3] We note that Appellant erroneously omitted an averment under the heading "o".

A.2d 894 (Pa.Super. 2004), a "cause of action" refers to the "negligent act or omission, as opposed to the injury which flows from the tortious conduct[.]" *Id*. at 896. In this vein, he maintains that, since Dr. Strulson's negligence occurred in Philadelphia, Appellant may continue this action there, regardless of whether tortious conduct also occurred in Montgomery County.

Further, Appellant distinguishes this matter from *Olshan v. Tenet Health Care System City Avenue, LLC*, 849 A.2d 1214 (Pa.Super. 2004), which the trial court relied upon in rendering its decision. Appellant argues that in *Olshan*, venue was found to be proper in Montgomery County because all of the medical treatment in question was furnished there. He continues that, since this matter involves negligent medical care in both Philadelphia and Montgomery counties, his action should remain in Philadelphia County, where he chose to proceed.

The trial court found that venue was present only in Montgomery County in that Appellant "was unable to establish that the medical treatment at the core of his case occurred in Philadelphia County." Trial Court Opinion, 12/16/16, at 2. The trial court characterized the basis of Appellant's complaint against Dr. Strulson as negligent referral. It relied on *Olshan*, *supra*, for the proposition that "a medical malpractice action must be brought in a county where [Appellant] received medical treatment." *Id*. at 3. It observed that the I-FLOW pain pump and all follow-up care occurred in

Montgomery County, and stated that "[t]he mere fact that [Appellant] consulted a family physician in Philadelphia County and his theory of negligent referral did not play a significant role in this matter." *Id*. In support of this finding, the trial court relied on a decision by this Court, wherein we found that medical care was not "furnished" to a plaintiff where the defendant "[a]t most . . . negligently made a referral[.]" *Id*. (citing *Cohen v. Furin*, 946 A.2d 125, 129 (Pa.Super. 2008)).

We find that the trial court abused its discretion in sustaining Dr. Krum's preliminary objections and transferring this matter to Montgomery County. Herein, Appellant alleged not only that Dr. Strulson negligently referred him to Dr. Krum for ongoing treatment of his right shoulder injury, but that Dr. Krum informed Dr. Strulson as to Appellant's prognosis and participated in the planned course of treatment. In addition, Appellant claims that Dr. Strulson failed to warn Appellant of the dangers of the I-FLOW pain pump and to properly monitor or supervise his ongoing condition. These claims allege acts of professional negligence ocurring in Philadelphia County.[4]

_____

[4] Appellees argue that venue is not proper since only a treating medical practitioner has a duty to warn. They contend that Dr. Krum alone owed Appellant a duty to warn regarding the dangers of the I-FLOW pain pump. Even assuming this position is accurate, we may not rely on such a consideration when determining whether Appellant has pled a cause of
*(Footnote Continued Next Page)*

Further, this matter is distinguishable from *Olshan*, *supra*, and *Peters*, *supra*. In *Peters*, we held that venue was not proper in the county where the plaintiff had ingested a prescription drug and suffered an allergic reaction, rather than in the county where she was prescribed the medication. In *Olshan*, we found that venue was not proper in Philadelphia County since the corporate defendants located in that county were sued under agency and corporate liability theories, whereas the medical care in question was furnished entirely in Montgomery County. Thus, in both cases, the medical care was furnished in only one county. Instantly, Appellant's complaint supports a cause of action for the negligent furnishing of medical services based on conduct occuring in both Philadelphia and Montgomery County. Hence, venue is proper in either locale. Pa.R.C.P. 1006(a.1) and (c)(2).

In summary, we find that Appellees did not sustain their burden of proving that Philadelphia County was an improper venue. *Wentzel*, *supra*. The trial court erred in determining that Appellant's complaint raised only a cause of action for negligent referral. Moreover, there is no basis in the rules of civil procedure or the relevant case law for the trial court's determination that venue was proper where the "core" of Appellant's

*(Footnote Continued)* ───────────

action pursuant to Rule 1006. In any case, Appellees did not similarly contest Appellant's averments as to negligent supervision and monitoring.

malpractice claim resided. Rather, the clear language of Rule 1006 contemplates venue lying in "any county in which the venue may be laid against any defendant," without consideration of the extent of liability as to each defendant. Pa.R.C.P. 1006(c)(2). Thus, the trial court abused its discretion in sustaining Dr. Krum's preliminary objections and transferring this matter to Montgomery County. As a result of our disposition with regard to Appellant's first issue, we need not reach his second claimed error.

Order reversed. Case remanded. Jurisdiction relinquished.

Judge Solano joins the memorandum.

Judge Platt files a Dissenting Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/28/2017

- 11 -