698 A.2d 52

**Nadine HIGHTOWER–WARREN and Desiree Jones–Wright, Guardians for the Estate of Their Mother, Eunice Evans, an Incapacitated Person, Appellants,**

**v.**

**Raymond E. SILK, M.D. and University Medical Center, Appellees.**

Supreme Court of Pennsylvania.

Argued April 30, 1997.

Decided July 23, 1997.

460

Frank A. Rothermel, Philadelphia, for Hightower–Warren and D. Jones–Wright.

George L. Young, Jr., Philadelphia, Frank J. McGovern, Media, for University Medical Ctr. and R. Silk, M.D.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## *OPINION*

NIGRO, Justice.

This case presents the question of whether the Superior Court properly affirmed the entry of a non-suit in a medical malpractice action, finding that Appellants' claim could not proceed to the jury under a theory of *res ipsa loquitur.* We find that the Superior Court affirmance was improper as Appellants presented sufficient expert testimony and were entitled to proceed to the jury under a theory of *res ipsa loquitur.*

In May of 1987, Appellant Eunice Evans ("Evans") saw Appellee, Raymond E. Silk, M.D. ("Dr. Silk"), for treatment arising from an automobile accident which had occurred in

February of that year. During a routine examination on June 13, 1987, Dr. Silk discovered an enlargement of Evans' left thyroid lobe. Dr. Silk determined that complete removal of Evans' thyroid, a thyroidectomy, was required in order to avoid recurrent problems and determine malignancy. During a thyroidectomy, the laryngeal nerve, one of two which make up the vocal cords, must be exposed and protected to prevent injury due to its close proximity to the thyroid.

Dr. Silk performed a thyroidectomy on Evans on June 23, 1987. After surgery Evans complained of hoarseness in her throat. Appellants, as guardians for Evans, brought a malpractice action against Dr. Silk alleging that he injured Evans' left laryngeal nerve during the removal of her thyroid. As a result, Evans suffered extreme hoarseness due to a paralyzed vocal cord.

At trial Appellants sought to introduce the videotaped deposition of their expert witness, John Bogdasarian, M.D. Appellees objected, claiming the expert testimony was too speculative as to the alleged breach of care and causation of the injury. After argument, the trial judge ruled that Dr. Bogdasarian's testimony was inadmissible, finding it was too speculative to establish a causal connection between Dr. Silk's surgical treatment and Evans' vocal cord paralysis. Without another medical liability expert to present, a non-suit was entered against Appellants. Subsequently, Appellants filed Post–Trial Motions seeking removal of the non-suit and grant of a new trial, maintaining the proffered expert testimony was sufficient to proceed to the jury under a theory of *res ipsa loquitur*. The trial court denied Appellants' Post–Trial Motions, finding the deposition testimony failed to demonstrate that Dr. Silk's actions deviated from accepted medical standards. Further, the trial court determined that the case could not proceed under a theory of *res ipsa loquitur* because Dr. Bogdasarian's testimony failed to indicate that Evans' injury would not have occurred absent negligence or that other responsible causes had been eliminated. The Superior Court affirmed the denial of the Post–Trial Motions.

 It is well-established that "a compulsory non-suit may be entered only when the plaintiff cannot recover under any view of the evidence, with every doubt resolved against its entry and all inferences drawn most favorably to the plaintiff." *Scott v. Purcell*, 490 Pa. 109, 113, 415 A.2d 56, 58 (1980) (citation omitted). Moreover, a plaintiff must be given the benefit of all favorable testimony and all reasonable inferences drawn therefrom. *Id.*

 Under Pennsylvania law, to state a *prima facie* cause of action for a medical malpractice claim, a plaintiff must establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered and the damages suffered were a direct result of the harm. *Mitzelfelt v. Kamrin*, 526 Pa. 54, 62, 584 A.2d 888, 891 (1990). Further, the plaintiff must also provide a medical expert who will testify as to the elements of duty, breach and causation.[1] *Id.*

 Appellants argue that Dr. Bogdasarian's expert testimony was sufficient to proceed to the jury under a theory of *res ipsa loquitur*. This Court first adopted the doctrine of *res ipsa loquitur*, as defined in the Restatement (Second) of Torts § 328(D), in *Gilbert v. Korvette, Inc.*, 457 Pa. 602, 327 A.2d 94 (1974). Further, this Court has applied the doctrine in medical malpractice cases. *Jones v. Harrisburg Polyclinic Hospital, supra*. Under a *res ipsa loquitur* theory of liability, it may be inferred that the harm suffered is caused by the negligence of the defendant when:

(a) the event is of the kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

1. The exception to the requirement of expert testimony in medical malpractice actions applies where the matter is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons. *Jones v. Harrisburg Polyclinic Hospital*, 496 Pa. 465, 471, 437 A.2d 1134, 1137 (1981).

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

Restatement (Second) of Torts § 328(D) (1965).

Instantly, the trial court determined that the testimony of Dr. Bogdasarian failed to establish the first and second elements under *res ipsa loquitur.* Specifically, the court found that Dr. Bogdasarian's testimony did not establish that absent Dr. Silk's negligence, the injury to Evans' laryngeal nerve would not have occurred.[2] (Trial court opinion, 11/29/95, at 7). Further, the court determined that Dr. Bogdasarian failed to rule out other responsible causes such as the conduct of the anesthesiologist, and failed to rule out possible non-negligent acts as the cause of Evans' injury. *Id.* at 8–9. The Superior Court affirmed, finding the record supports the trial court's conclusion that Dr. Bogdasarian's testimony failed to establish that Evans' injury during surgery did not occur in the absence of negligence.[3]

The Superior Court faced a virtually identical case as the instant matter in *Sedlitsky v. Pareso,* 400 Pa.Super. 1, 582 A.2d 1314 (1990), *appeal denied,* 527 Pa. 673, 594 A.2d 659 (1991). In *Sedlitsky,* the issue raised was whether the trial court erred in failing to instruct the jury as to *res ipsa loquitur.* Similarly, in *Sedlitsky,* plaintiff experienced hoarseness after undergoing surgery to remove half of her thyroid

2. In support, the trial court noted that Dr. Bogdasarian could not identify the precise location of the injury, could not identify what instrumentalities used by Dr. Silk caused the injury and could not approximately say when the injury occurred. According to the trial judge, "[Dr. Bogdasarian] only could say that [Evans'] voice became hoarse, and it came from some cause but he could not state to a reasonable degree of medical certainty that [Dr. Silk] more likely than not injured [Evans] during the June 1987 thyroidectomy." (trial court opinion, 11/29/95 at 7).

3. In its opinion, the Superior Court noted that the trial court addressed the *res ipsa loquitur* theory although Evans did not raise it. Despite that finding, the Superior Court still considered the merits of Evans' claim. Appellate courts have found issues to be waived but nonetheless deferred to the trial court's decision to address them anyway. *See James v. Nolan,* 418 Pa.Super. 425, 427 n. 1 & n. 2, 614 A.2d 709, 710–11, n. 1 & n. 2 (1992); *Smith v. Brooks,* 394 Pa.Super. 327, 340 n. 2, 575 A.2d 926, 932 n. 2 (1990), *appeal denied,* 527 Pa. 625, 592 A.2d 45 (1991).

gland. After being examined by a physician, plaintiff was informed that the hoarseness was a result of permanent vocal cord paralysis. At trial, plaintiff produced expert testimony that the paralysis occurred during the operation and that the surgeon must have somehow stretched the vocal cord. Additionally, the expert testified that the injury is not the type to occur in the absence of negligence unless unusual circumstances were present and there was no evidence of unusual circumstances. Thus, the expert concluded the surgeon must have been negligent and breached the standard of care by failing to protect the vocal cords while operating. Based on this testimony, the *Sedlitsky* Court found that plaintiff produced sufficient evidence to raise an inference that it was more likely than not that plaintiff's injuries were caused by defendant's negligence, and, therefore, the jury should have been instructed on the *res ipsa loquitur* doctrine.[4]

Instantly, a review of Dr. Bogdasarian's testimony reveals that he established all three elements of *res ipsa loquitur*, and thus, the case should have been submitted to the jury under that doctrine. Satisfying the first prong of *res ipsa loquitur*, Dr. Bogdasarian testified that the injury to Evans' left recurrent laryngeal nerve was the kind of event that does not occur in the absence of negligence under the operative conditions as described by Dr. Silk. Misquoting that testimony, the Superior Court stated that Dr. Bogdasarian explained that even if the surgery was performed in a non-negligent manner, the injury could still occur. (Superior Court opinion at 5). While Dr. Bogdasarian admitted that in certain situations injury to the recurrent laryngeal nerve can occur in the absence of negligence, he emphasized that none of those situations were present here.[5] In fact, Dr. Silk admitted he encountered no unusual difficulties or complications during this operation. (Silk N.T., 10/12/94 at 12).

**4.** Curiously, in this matter, the Superior Court failed to mention its *Sedlitsky* decision despite its nearly indistinguishable facts.

**5.** As examples, Dr. Bogdasarian cited instances where there is scarring around the thyroid gland, where there is an aberrant course of the recurrent laryngeal nerve or where there is a cancer growing on the recurrent laryngeal nerve. (Bogdasarian N.T., 1/22/94, at 70–73).

■ In satisfaction of the second prong of *res ipsa loquitur*, Dr. Bogdasarian testified that he was able to rule out all other causes of the injury other than Dr. Silk's negligence.[6] (Bogdasarian N.T., 1/22/94, at 44). Dr. Bogdasarian testified that, within a reasonable degree of medical certainty, the injury to Evans' voice occurred during the procedure at the hands of Dr. Silk as a result of substandard treatment or handling of the recurrent laryngeal nerve. *Id.* at 21–22. The third prong of *res ipsa loquitur*, that the indicated negligence was within the defendant's duty to the plaintiff, is not even contested by Dr. Silk.[7]

In defense of Evans' malpractice claim, Dr. Silk proffered that the recurrent laryngeal nerve was somehow strangled or entrapped by subsequent scar tissue build-up. Again, *Sedlitsky* is instructive. There, the defense maintained that the recurrent laryngeal nerve was unusually adhered to the thyroid, so that when the thyroid was rotated out of plaintiff's neck, the nerve was unavoidably stretched through no fault of the doctor. However, the doctor's operative report did not mention that the thyroid was attached to the nerve. Thus, the *Sedlitsky* Court held that the jury could conclude plaintiff's injury resulted from negligence since no mention was made in the report regarding nerve attachment and no unusual circumstances existed during the operation. *Sedlitsky* 400 Pa.Super. at 7, 582 A.2d at 1317. Here too, Dr. Silk's operative report made no mention of any unusual complications during surgery that would account for Evans' injury. Moreover, Dr. Silk never mentioned possible scar entrapment in the discharge summary he prepared following Evans' surgery even though

6. It is noteworthy that Dr. Silk testified that he ordered a laryngoscopy prior to the thyroid operation. He stated this was done to visualize the affected area and ensure that Evans' left and right recurrent laryngeal nerves and vocal cords were healthy and in an uninjured state preoperatively. Moreover, he indicated that both the vocal cords and the recurrent laryngeal nerve were fine before the operation. (Silk N.T., 10/12/94, at 23).

7. "[I]t is within the scope of [a physician's] duty of care to protect his patient against preventable injuries which could reasonably occur during the performance of surgery." *Sedlitsky v. Pareso,* 400 Pa.Super. 1, 7, 582 A.2d 1314, 1317 (1990), *appeal denied,* 527 Pa. 673, 594 A.2d 659 (1991).

the discharge summary was prepared seven months after the surgery. (Silk N.T., 10/12/94, at 94, 96).

We find that Appellants satisfied all three elements of *res ipsa loquitur* and properly established a *prima facie* case of medical malpractice. As in *Sedlitsky,* Appellants were entitled to proceed to the jury under that doctrine. In affirming the grant of the non-suit, the Superior Court committed an error of law as it failed to follow the non-suit standard set forth in *Scott v. Purcell, supra.* The Superior Court failed to accord Appellants the benefit of Dr. Bogdasarian's favorable testimony and any reasonable inferences drawn from that testimony. Accordingly, the Order of the Superior Court is reversed and this matter is remanded to the Court of Common Pleas, Philadelphia County, for proceedings consistent with this opinion.