## Feldman v. Entine

*Eric G. Zajac,* for plaintiffs.
*George L. Young,* for defendant.

DiNUBILE JR., *J.,* September 9, 1999—This opinion arises from the denial of defendant's post-trial motions and the entry of judgment on the verdict, in this medical malpractice case, in favor of the plaintiff, Alan Feldman, and against the defendant, Joseph Entine M.D., in the amount of $2,500,000. Judgment was also entered in favor of plaintiff's wife, Jacqueline Feldman, in the amount of $300,000 for loss of consortium. Delay damages were assessed against the defendant and in favor of the plaintiff-husband in the amount of $1,251,863.20, resulting in a total judgment entered against the defendant and in favor of the plaintiff-husband to be $3,751,863.20.[1] The

---

1. Plaintiffs had sought the sum of $1,311,075.34 as delay damages; however, this court excluded the time period from 1/21/98 to

major grounds for post-trial relief involve this court's decision to charge the jury on the doctrine of res ipsa loquitur. Defendant also sought remittitur.

The facts giving rise to these post-trial issues can be stated as follows. The plaintiff-husband underwent thyroid surgery on August 16, 1990 to remove a cancerous growth which was imbedded in his thyroid gland. The thyroidectomy, the subject matter of this suit, was performed by the defendant, Joseph Entine M.D., a certified general surgeon. During the operation, the plaintiff-husband's laryngeal nerve was damaged, causing paralysis of the left vocal cord. As a result of this paralysis, plaintiff-husband's voice was permanently injured, resulting in constant hoarseness and weakness of his voice. The issues of both negligence and causation were hotly contested. The plaintiffs asserted that injury to the vocal cord could not have occurred in the absence of negligence. On the other hand, the defense presented testimony through the defendant and his expert that he did not cause injury to the nerve; and in any event, harm to the vocal cords could occur in an operation of this nature in the absence of negligence.

The defendant's major assertion contained in his post-trial motions was that the court committed reversible error during its definition of negligence by instructing the jury on the theory of res ipsa loquitur. Defendant argues that the evidence did not warrant such a charge in light of certain conflicts in the evidence presented pertaining to the elements of this doctrine. This court respectfully disagrees. Plaintiffs' expert, Dr. Harold Arlen, a certified

4/21/98, due to a Commonwealth Court-ordered stay stemming from the insolvency of defendant's liability insurance carrier, Physicians Insurance Co.

otolaryngologist (an ear, nose and throat specialist), testified that under the circumstances of this operation, negligence was the cause of injury to the plaintiff-husband's laryngeal nerve resulting in paralysis to the vocal cord. He further testified that such an injury could occur without negligence only under the following three limited circumstances: (1) if the cancer was impinging upon the nerve itself; (2) there was a distortion of the anatomy (*e.g.* the gland was so large that it was impinging upon the nerve); or (3) there was scar tissue on the nerve due to a prior surgery. Since none of these conditions existed at the time of the surgery, Dr. Arlen concluded that the defendant must have been negligent in performing the operation since the vocal cord was injured. He could not state with specificity, however, how the injury to the laryngeal nerve, causing paralysis to the vocal cord, actually occurred. Consequently, in its charge to the jury, this court first defined the basic principles of negligence. The jurors then were instructed that they could also infer negligence, but only upon certain limited circumstances provided they found the following three elements (comprising the doctrine of res ipsa loquitur) to be present: (1) the event was of a kind which ordinarily does not occur in the absence of negligence; (2) other responsible causes, including the conduct of the plaintiff-husband, third persons and other events were sufficiently eliminated by the evidence; and (3) the negligence arose during the scope of the defendant's duty to the plaintiff-husband; namely, during the course of the operation. This instruction was given in reliance on *Hightower-Warren v. Silk,* 548 Pa. 459, 698 A.2d 52 (1997). *Hightower* involved a thyroidectomy in which the court held that a res ipsa charge should have been given. This court also consid-

ered the cases of *D'Ardenne v. Strawbridge & Clothier Inc.,* 712 A.2d 318 (Pa. Super. 1998) and *Smith v. City of Chester,* 357 Pa. Super. 24, 515 A.2d 303 (1986) prior to its decision, occurring at the pre-charge conference, to give this instruction. These cases hold that although a res ipsa loquitur instruction is not warranted in the face of clear proof of negligence, it must be given and is appropriate where the facts of a particular case lie somewhere in the "gray zone." This so-called gray zone occurs when the plaintiff can produce no evidence of specific acts of negligence and must therefore rely on a res ipsa loquitur inference. The *D'Ardenne* case further held that a plaintiff may be permitted to proceed under both direct negligence and res ipsa loquitur theories. See also, *Smith, supra.* In the instant case, the plaintiffs' evidence of direct negligence was not clear-cut. Their expert, Dr. Arlen, testified that under the particular circumstances of this surgery, injury must have been due to defendant's negligence. His conclusion was based on the fact that an injury without negligence could have occurred only in the presence of three conditions, all of which he had ruled out. He was unable, however, to specify exactly how harm to the vocal cord took place. Under these circumstances, and in keeping with the holding of the above previously cited cases, plaintiffs were permitted to proceed under both direct negligence and res ipsa loquitur. Thus, the court charged the jury under both theories.

The defendant attempts to distinguish these cases from the instant situation because the plaintiff-husband's own treating physician, Dr. Mark R. Rosen, a certified otolaryngologist, had testified during cross-examination, in his videotaped testimony, that injury to the nerve and vocal cord could have occurred in the absence of negli-

gence. The defense therefore argues that since there was a conflict in the plaintiffs' own testimony concerning the existence of the first two elements necessary to permit an inference of negligence (the event does not ordinarily occur in the absence of negligence and other responsible causes must be eliminated), it was erroneous for the court to have given the res ipsa charge. This court disagrees. As stated, Dr. Rosen was called by way of videotaped deposition to testify as to the treatment he rendered to the plaintiff-husband as a result of the paralysis to his vocal cord. He testified that in April and June of 1991, he performed two surgical procedures by injecting the plaintiff-husband with a Teflon paste substance behind the vocal cord. This treatment had the effect of moving the injured vocal cord closer to the other vocal cord and toward the center or midline of the larynx. As a result of these surgeries, the plaintiff-husband's condition markedly improved. On cross-examination, defense counsel, over the objection of the plaintiffs, had asked the doctor whether, in his opinion, defendant breached the standard of care and whether this injury could have occurred in the absence of negligence. The doctor testified that there was no breach in this case and that the injury could in fact have occurred in the absence of negligence. At a pretrial motion in limine hearing, the court precluded that portion of the videotaped deposition in which Dr. Rosen opined that defendant had met the standard of care since he was not the defendant's expert and was called solely as the treating physician by the plaintiffs. Of course, the defendant had his own expert, Dr. Raymond Lesser, an otolaryngologist, who testified on behalf of the defendant. The court, however, did permit, over objection of the plaintiffs, that portion

of Dr. Rosen's deposition where he expressed the opinion that the injury could have occurred in the absence of negligence. The court reasoned that this testimony did not deal directly with the issue of Dr. Entine's alleged malpractice.

After a review of the case law cited herein, the court concludes that the difference between plaintiff-husband's treating physician and expert concerning whether injury to the vocal cord could have occurred in the absence of negligence did not preclude the res ipsa loquitur charge. It must be borne in mind that plaintiffs' counsel never sought to introduce that portion of Dr. Rosen's opinion testimony about whether harm could have occurred in the absence of negligence. It was brought out on cross-examination and permitted over his objection. In addition, the court's charge was extremely explicit that the jury could consider the inference of negligence only if they found the three elements which comprise the doctrine of res ipsa loquitur to be present. Defense counsel, of course, was permitted to argue and did so that this conflict in the testimony between plaintiffs' expert and treating physician should lead them to conclude that defendant did not commit malpractice during the operation. Even had the charge not been given, defendant would have made the same argument about the conflict in plaintiffs' evidence. It is therefore difficult to conceive how this charge was the determining factor causing an adverse verdict against the defendant.

The defendants also assert that the verdict in favor of the plaintiffs should be remitted. The test is not whether this court agreed with the verdict but whether the evidence presented was supported by the jury's findings. Was the award so excessive as to shock the court's con-

science? See *Botek v. Mine Safety Appliance Corp.*, 531 Pa. 160, 611 A.2d 1174 (1992); *Stark v. Lehigh Foundries Inc.*, 388 Pa. 1, 130 A.2d 123 (1957); *Doe v. Raezer,* 444 Pa. Super. 334, 664 A.2d 102 (1995). A review of the testimony precludes remittitur. The plaintiff-husband suffered permanent injury to his vocal cord which renders his voice hoarse and weak. He underwent two surgical Teflon procedures described by Dr. Rosen to improve his condition. He was the second highest ranked instructor in the country in a form of self-defense developed by the Israelis, called Karav Maga. He had first studied this form in Israel and had spent many years to reach his ranking. Prior to the surgery, he made his living as an instructor, appearing in various television programs. In order to demonstrate what his voice was like before the surgery as compared to its present state, he presented brief portions of videotaped television shows demonstrating his instruction. Testimony was introduced showing that as a result of the injury, which he sustained to his vocal cord, he was permanently deprived from pursuing his career in this field. After weighing and considering this evidence, the jury placed a value as part of its award on his loss of the ability to enjoy this endeavor. It is not for this court to challenge the monetary figure which the jury set for the emotional loss of someone in his early forties who will never be able to continue to work in his field of choice. Similarly, plaintiff-wife's claim for loss of consortium must stand as well. As a result of plaintiff-husband's injury, he has become abrupt and irritable, making her life more difficult.

Counsel for the defendant, Dr. Entine, in the alternative to his post-trial relief, filed a motion requesting the court to mold the verdict against him to include another

defendant, Surgical Services Ltd., as well. This entity, which was also sued, was the professional corporation for whom Dr. Entine was employed during the time in which he treated the plaintiff, Alan Feldman. Plaintiffs' counsel joins in the motion. It is opposed by counsel for the Medical Professional Liability Catastrophe Loss Fund because a grant of this motion would increase the extent of the fund's liability.[2] Its present attorney also opposes the motion. This corporation was represented by Dr. Entine's trial counsel until this motion to mold was filed. In Dr. Entine's answer to the complaint, he admitted that he was an employee of Surgical Services Ltd. It is for this reason that both defendant, Entine, and plaintiffs seek a grant of the motion. This case was first tried before the Honorable Paul Ribner in May 1997. It ended in a mistrial because the jury could not reach a decision. At no time during that trial was the liability of Surgical Services Ltd. presented to the jury. The same was true for the retrial before this court. In both trials, neither the attorneys nor any of the witnesses mentioned Surgical Services Ltd. as a defendant nor was there a request to add this corporation for liability consideration in questions submitted to the jury. The first time this court became aware of the fact that Surgical Services Ltd. was an entity involved in any way in this case was after trial when it received the defendant's motion to mold the verdict to include it. Under these circumstances, the court denies this motion.

---

2. Since post-trial motions have been denied and judgment has been entered on the verdict, the liability of the CAT Fund would be increased if the motion were granted. The fund then would be obligated to cover and supply an additional $1,000,000 on behalf of the professional corporation to satisfy the judgment.

Defendant argues (and plaintiffs join in this assertion) that since there was an admission of agency on the part of the defendant in his answer to plaintiffs' complaint (that is that Dr. Entine was an employee of the corporation during the time of the malpractice) the verdict rendered against him automatically should be molded to include the professional corporation as well. Since no mention was made of this entity during the trial of this case, how can the court mold a verdict against it? Normally, in a medical malpractice trial, where both the defendant and his/her professional corporation is sued, and there being no question of agency, the court usually places on the record that a finding against the physician will result in a verdict against the professional corporation without the need to submit a separate question of the corporation's liability to the jury. This scenario did not take place here. There was never any agreement placed on the record by counsel that the liability of the doctor would result in a liability of the entity or vice versa. Therefore, the court cannot mold a verdict to include an entity that the court did not know was in any way connected with the case and, most importantly, whose liability the jury never considered. Consequently, the motion is denied.

Plaintiffs' counsel argues in his brief that assuming arguendo that the verdict cannot be molded without there being actual testimony as to the relationship between the defendants, Entine and Surgical Services Ltd., then the proper recourse would be to conduct a trial on this narrow issue. Plaintiff then would prevail since there was an admission of agency in the pleadings. Even assuming that the admission of agency by Dr. Entine constitutes an admission on the part of the professional corporation

as well, plaintiffs' request which would result from this argument extends beyond the parameters of the motion. The motion seeks a molding of the verdict to include the professional corporation, not a separate trial on the issue of whether or not the physician was an agent of it. In any event, having not moved for trial against the corporation, res judicata principles would bar it.

"Res judicata bars not only those issues actually raised but also those issues which could have been litigated in the first action." *Day v. Volkswagenwerk,* 318 Pa. Super. 225, 236, 464 A.2d 313, 318 (1983).

## ORDER

And now, September 9, 1999, the court enters the following order:

(1) The post-trial motions of defendant, Joseph Entine M.D., are hereby denied. Enter judgment of the jury verdict in favor of plaintiff-husband, Alan Feldman, and against defendant, Joseph Entine M.D., in the amount of $2,500,000. Delay damages are also assessed against the defendant, Joseph Entine M.D., in favor of plaintiff-husband, Alan Feldman, in the amount of $1,251,863.20; making the total judgment entered in favor of plaintiff-husband, Alan Feldman, and against defendant, Joseph Entine M.D., to be $3,751,863.20. Also enter judgment on the jury verdict for loss of consortium in favor of plaintiff-wife, Jacqueline Feldman, and against defendant, Joseph Entine M.D., in the amount of $300,000.

(2) The motion of defendant, Joseph Entine M.D., and joined into by the plaintiffs, to mold the jury verdict to include the defendant, Surgical Services Ltd., is denied. Therefore, the motions of defendant, Surgical Services

Ltd., for preliminary objections and judgment on the pleadings are rendered moot.

(3) Counsel for defendants, Joseph Entine M.D. and Surgical Services Ltd., shall notify plaintiffs' counsel in writing about any and all liability policies in effect in August 1990 and the amount of coverage provided within 20 days of the date of this order.