J-S74017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SHERWOOD MEDLEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DYNAMIC THERAPY SERVICES, LLC. | : | No. 2047 EDA 2017 |
| D/B/A DYNAMIC PHYSICAL THERAPY | : | |
| AND DYNAMIC PHYSICAL THERAPY | : | |
| & REHABILITATION CENTER, INC. | : | |
| D/B/A DYNAMIC PHYSICAL THERAPY | : | |
| AND DYNAMIC PHYSICAL THERAPY | : | |
| OF PENNSYLVANIA, LLC D/B/A | : | |
| DYNAMIC PHYSICAL THERAPY AND | : | |
| AQUATIC REHABILITATION CENTER | : | |
| D/B/A DYNAMIC PHYSICAL THERAPY | : | |
| AND PHYSIOHEALTH HOLDINGS, | : | |
| LLC D/B/A DYNAMIC PHYSICAL | : | |
| THERAPY AND PHYSIOHEALTH, INC. | : | |
| IND D/B/A PHYSIOHEALTH | : | |
| HOLDINGS, LLC | | |

Appeal from the Order Entered May 25, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  October Term, 2016 No. 3650

BEFORE:  BOWES, J., LAZARUS, J., and RANSOM, J.

MEMORANDUM BY LAZARUS, J.: **FILED JANUARY 17, 2018**

Sherwood Medley appeals from the trial court's order, entered in the Court of Common Pleas of Philadelphia County, sustaining Dynamic Therapy Services, LLC, d/b/a Dynamic Physical Therapy and Dynamic Physical Therapy & Rehabilitation Center, Inc. (individually, "Dynamic") d/b/a  Dynamic Physical Therapy and Dynamic Physical Therapy of Pennsylvania, LLC d/b/a/ Dynamic

Physical Therapy and Aquatic Rehabilitation Center d/b/a Dynamic Physical Therapy and Physiohealth Holdings, LLC d/b/a/ Dynamic Physical Therapy and Physiohealth, Inc. Ind. d/b/a/ Physiohealth Holdings, LLC's (collectively "Defendants") preliminary objections, transferring venue[1] of the underlying action from Philadelphia County to either Berks or Montgomery Counties,[2] and ordering Medley to incur all costs of transfer.[3]  After careful review, we affirm.

_____

[1] In **Wentzel v. Cammarano**, 166 A.3d 1265 (Pa. Super. 2017), our Court recently reiterated the scope of review of a trial court's order granting a transfer of venue:

> A trial court's decision to transfer venue will not be disturbed absent an abuse of discretion.  A plaintiff's choice of forum is to be given great weight, and the burden is on the party challenging the choice to show it was improper.  However, a plaintiff's choice of venue is not absolute or unassailable.  Indeed, if there exists any proper basis for the trial court's decision to grant a petition to transfer venue, the decision must stand.

**Id.** at 1268, citing **Jackson v. Laidlaw Transit, Inc. & Laidlaw Transit PA, Inc.**, 822 A.2d 56, 47 (Pa. Super. 2003) (citations, quotations, and quotation marks omitted).

[2] Our Court has subject matter jurisdiction over this appeal pursuant to Pa.R.A.P. 311(c) (interlocutory appeals as of right; changes of venue).

[3] The trial court entered two orders, both dated May 24, 2017, granting Defendants' preliminary objections and transferring venue of the underlying case.  The first order, from which Medley has filed his notice of appeal, indicates that venue is transferred to either Montgomery County or Berks County, giving Medley the opportunity to choose one of the two stated forums.  The second order indicates that venue is transferred to Berks County.  Pennsylvania Rule of Civil Procedure 236 notice was sent to the parties in the first order on 5/26/17, and on 6/29/17 in the second order.  Thus, we will confine our review to the first order, which Medley appealed from on June 14, 2017, prior to the entry of the second order.  We remind the trial court that once it enters a final, appealable order and a party files a timely notice of

On November 10, 2014, Medley, a front-seat passenger in a paratransit vehicle, was being transported from his then-home in Reading, Berks County[4] to a physical therapy appointment at Defendant Dynamic Physical Therapy. Medley alleges that he was neither restrained nor secured to his seat by the driver of the vehicle and that the driver, who was speeding, slammed on his breaks to avoid other traffic after having disregarded a stop sign. On October 26, 2016, Medley filed a complaint against the Defendants alleging negligence and negligent entrustment, and averring that he was "violently thrown inside the vehicle[, and] . . . was caused to fly out of his seat and strike his head on the interior of the vehicle causing him to suffer serious personal injuries . . . [which included] aggravation of his degenerative disc disease[,] a severe shock to his nerves and nervous system, great physical pain and mental anguish and was prevented from attending to his usual duties, activities, and avocations[.]" Plaintiff's Complaint, 10/26/16, at ¶¶ 13-18. Medley claims that he will need to undergo continuing medical care and incur various expenses to treat the long-term injuries suffered from the accident.[5]

---

appeal from that order, it no longer has jurisdiction to act in the case. *See* 42 Pa.C.S. § 5505 ("Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, *if no appeal from such order has been taken or allowed*.") (emphasis added).

[4] While Medley resided in Berks County at the time of the accident, the complaint indicates that he is currently a resident of Philadelphia County.

[5] Medley assessed his current costs and expenses from medical care and treatment necessitated by the accident at $33,507.42.

On November 29, 2016, Defendants filed preliminary objections challenging venue in Philadelphia, pursuant to Pennsylvania Rules of Civil Procedure 1028(a)(1) and 2179(a), asserting that none of the Defendants maintain business offices in Philadelphia, the automobile accident took place in Berks County, Medley resided in Berks County, Medley was transported by Berks County Ambulance to a Reading, Berks County Hospital, was treated at Berks County Orthopedics for his injuries sustained from the accident, and "no defendant resides in or regularly conducts business in Philadelphia." Defendants' Preliminary Objections, 11/29/16, at ¶¶ 2, 4-6, & 8. After a hearing,[6] the trial court entered an order sustaining the Defendants' preliminary objections and transferred the case to either Montgomery or Berks County. This appeal follows.

On appeal, Medley presents the following issues for our consideration:

---

[6] We note, with disapproval, Medley's failure to have the notes from the April 19, 2017 venue hearing transcribed. **See** Thomas Bruno, Esquire's Statement of No Transcript, 6/14/17. We remind counsel that pursuant to Pa.R.A.P. 1911(a), "The appellant shall request any transcript required under this chapter in the manner and make any necessary payment or deposit therefor in the amount and within the time prescribed by [the] Rules[.]" Moreover, failure to comply with Rule 1911(a), may result in "dismissal of the appeal." Pa.R.A.P. 1911(d). Absent a transcript of proceedings relevant to the issues raised on appeal, our Court may be without an adequate record to decide whether those issues have merit. **See Stumpf v. Nye**, 950 A.2d 1032 (Pa. 2008) (where plaintiff did not provide Superior Court with transcription of charging conference, Court had no basis upon which to review plaintiff's objection to jury instruction and found issue waived). We also note that counsel could have provided this Court with a statement in absence of transcript pursuant to Pa.R.A.P. 1923.

(1)    Did the trial court misapply the law and hence abuse its discretion/commit an error of law when it held that [Medley's] compliant alleged a claim for medical malpractice and therefore venue was only proper in Bucks County?

(2)    Did [Medley] introduce sufficient evidence establishing that Defendant Dynamic Therapy Services, LLC d/b/a Dynamic Physical Therapy regularly conducts business in Philadelphia County thereby making venue proper in Philadelphia County?

First, Medley contends that the trial court improperly classified his case as one of medical or professional malpractice, rather than ordinary negligence.

Under 42 Pa.C.S. § 5101.1 of the Judicial Code, venue in medical professional liability actions is proper *only* in the county where the incident giving rise to the matter occurred. **See** 42 Pa.C.S. § 5101.1(b); **see also** Pa.R.C.P. 1006. Thus, we must determine whether the trial court correctly classified Medley's action as one of professional negligence; if this case is a medical professional liability action, venue properly lies in Berks County, the county where the accident occurred.

> Although the basic elements of both ordinary negligence and medical malpractice are the same, medical malpractice has distinguishing characteristics. Medical malpractice is further defined as the "*unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services*." **Toogood**[ **v. Owen J. Rogal, D.D.S., P.C.**], 824 A.2d [1140,] 1145 [(Pa. 2003)]. The underlying elements of negligence in a medical malpractice claim, mirroring those of a basic negligence claim, **see Estate of Swift** [**by Swift v. Northeastern Hosp.**], 690 A.2d [719,] 722 [(Pa. Super. 1997)], are more specifically described as a "duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the

harm." ***Toogood***, 824 A.2d at 1145 (quoting ***Hightower-Warren v. Silk***, [] 698 A.2d 52, 54 [(Pa.] 1997)).

***Grossman v. Barke***, 868 A.2d 561, 566 (Pa Super. 2005) (emphasis added).

In ***Grossman***, the plaintiff's decedent was injured when she fell from an examining table while her doctor was out of the examination room. The trial court determined that the claim was one of medical malpractice, not ordinary negligence, where it was alleged that the plaintiff's injuries were the result of the doctor's negligence and his "failure to provide medical assistance . . . within a reasonably expected standard of care." ***Id.*** Also relevant to the court's determination were the following facts: (1) the injured party had been the doctor's patient for a substantial period of time; (2) the injured party was at the hospital for medical services (pre-examination for a knee replacement); (3) the injured party was under the "professional care and control" of the doctor at the time of the incident; and (4) the doctor had instructed the injured party to climb on the examining table without any assistance, despite her age, weight, lack of dexterity and mobility, and likelihood of losing balance due to her diabetes and/or other physical ailments known by the doctor. ***Id.*** at 570-71. In sum, our Court found that the plaintiff's theory of liability "was premised on the physician-patient relationship and, in fact, [the doctor's] duty is defined by Plaintiff within the context of the physician-patient relationship." ***Id.*** at 571.

In the instant case, the trial court concluded that Medley's complaint alleged medical malpractice because: (1) Medley was injured in an automobile

accident while being transported by Defendants from his home to Defendants' physical therapy business; (2) Medley avers the injuries were sustained because he was not properly strapped into the automobile seat; (3) Medley was under the care of Defendants acting as medical providers; and (4) a medical expert will be required to testify regarding the standard of care for transporting a patient with Medley's particular maladies. Trial Court Opinion, 8/15/17, at 4-5.[7]

A medical professional liability action is defined as "[a]ny proceeding in which a medical professional liability claim is asserted." 42 Pa.C.S. § 5101.1(c). Moreover, a medical professional liability claim is "[a]ny claim seeking the recovery of damages or loss from a health care provider arising out of any tort . . . causing injury . . . *resulting from the furnishing of health care services which were or should have been provided*." **Id.** (emphasis added). Specifically, claims of medical malpractice necessarily raise questions involving medical judgment. **Grossman**, 868 A.2d at 567.

_____

[7] The trial court cites to **Ditch v .Wynesborough Hospital**, 917 A.2d 317 (Pa. Super. 2007), to supports its conclusion that this case is one of medical malpractice, not ordinary negligence. Specifically, the trial court likens that case in which a "patient fell out of a hospital bed because she was not strapped down," Trial Court Opinion, 8/15/17, at 4, to the instant case. **Ditch**, however, is clearly factually distinguishable from this case. In **Ditch**, the decedent had a stroke, was taken to the emergency room of the hospital and, while being moved to a hospital room, fell from her bed and suffered fatal head injuries. There, the decedent-patient clearly sustained her fatal injuries during the furnishing of health care services from a healthcare provider.

Medley argues that the conduct at issue did not concern the rendering of medical care. Rather, he asserts it involves facts attendant to a personal injury action stemming from an automobile accident. Thus, he contends this is an ordinary negligence action, not subject to section 5101.1 venue rules. We agree.

In **Grossman**, our Court looked to the Michigan Supreme Court's explanation of the distinction between ordinary negligence and medical malpractice as follows:

> A medical malpractice claim is distinguished by two defining characteristics. First, medical malpractice can occur only **within the course of a professional relationship**. Second, claims of medical malpractice necessarily raise questions **involving medical judgment**. Claims of ordinary negligence, by contrast, raise issues that are within the common knowledge and experience of the [fact-finder]. Therefore, a court must ask two fundamental questions in determining whether a claim sounds in ordinary negligence or medical malpractice: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience. If both these questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern medical malpractice actions.

*Id.* at 570 (emphasis added).

The question boils down to whether Defendants were furnishing Medley health care services at the time he was being transported from his home to physical therapy. We conclude that Medley was not in the care of a medical provider when he was being transported by an independent paratransit company to his physical therapy appointment at Defendant's place of

- 8 -

business; simply put, he was not in the course of treatment as he rode in the vehicle. Thus, his cause of action sounds in ordinary negligence as a result of the negligent conduct of the driver of the vehicle. Here, the professional relationship between Medley and the physical therapist(s) had not yet occurred. Moreover, while Medley may have a medical condition that requires special assistance when he rides in a vehicle, the standard of that care is a negligence question that can be addressed by a witness who transports paratransit clients, not by a medical expert who opines on medical malpractice claims. The negligence issues are clearly within the common knowledge and experience of a fact-finder. The case does not raise questions involving medical judgment. **Grossman**, **supra**. Simply put, the matter "is so simple, and the lack of skill or want to care [is] so obvious, as to be within the range of the ordinary experience and comprehension of even nonprofessional persons." **Chandler v. Cook,** 265 A.2d 794, 796 n.1 (Pa. 1970).

Medley next contends that the trial court erred in not finding that he presented sufficient evidence that Defendants regularly conducted business in Philadelphia.

In the present case, Medley alleged that Defendants were liable under negligence and negligent entrustment theories when he was seriously injured in the paratransit automobile owned, controlled and operated by Defendants. Medley served Defendants in Montgomery County at their Limerick business address, but filed his personal injury complaint in Philadelphia County alleging

that all Defendants do business in Philadelphia. **See** Plaintiff's Complaint, 10/26/16, at ¶¶ 2-7. Medley also alleged that "[a]t all times relevant hereto, all defendants jointly and/or severally were a common carrier for hire, operating paratransit vehicles for transportation of passengers, for hire, over and along certain streets in the Commonwealth, including Philadelphia, for the mutual benefit of all defendants. **Id.** at ¶ 10.

Venue is the place in which a particular action is to be brought and determined; it is a matter for the convenience of the litigants. **County Constr. Co. v. Livengood Constr. Co.**, 142 A.2d 9 (Pa. 1958). Venue over an action involving a corporation is governed by Pa.R.C.P. 1006 and Pa.R.C.P. 2179, which state, in pertinent part:

> Rule 1006. Venue. Change of Venue
>
> * * *
>
> (b) Actions against the following defendants, except as otherwise provided in subdivision (c), may be brought in and only in the counties designated by the following rules: political subdivisions, Rule 2103; partnerships, Rule 2130; unincorporated associations, Rule 2156; **corporations and similar entities, Rule 2179.**

Pa.R.C.P. 1006 (emphasis added). Rule 2179 states:

> (a) Except as otherwise provided by an Act of Assembly, by Rule 1006(a.1) or by subdivision (b) of this rule, a personal action against a corporation or similar entity may be brought in and only in
>
> > (1) the county where its registered office or principle place of business is located;
> >
> > (2) a county where it regularly conducts business;
> >
> > (3) the county where the cause of action arose; or

- 10 -

> (4) a county where a transaction or occurrence took place out of which the cause of action arose.

Pa.R.C.P. 2179.

In determining whether a corporation regularly conducts business in a county, our courts "employ a quality-quantity analysis." **Zampana-Berry v. Donaghue**, 921 A.2d 500, 503 (Pa. Super. 2007). A business entity must perform acts in a county of sufficient quality and quantity before venue in that county will be established. **Id.** Only direct acts are included in the "regularly conducted business" analysis.; a single act is not enough. **Purcell v. Bryn Mawr Hosp.**, 579 A.2d 1282, 1285 (Pa. 1990). Each case rests on its own facts, which are derived from the parties' pleadings and any other evidence of record. **Id.** at 1286; Pa.R.C.P. No. 1028(c)(2) (allowing court to consider evidence by depositions or otherwise).[8]

"Quality of acts" means "those directly, furthering or essential to, corporate objects; they do not include incidental acts." **Purcell,** 579 A.2d at 1285. Quantity means those acts which are "so continuous and sufficient to be general or habitual." **Id.** Instantly, we agree with the trial court that Medley has failed to provide sufficient evidence to show that Defendants regularly conduct business in Philadelphia County.

In claiming that venue in Philadelphia County is appropriate, Medley asserts that "one of Dynamic's sister corporations, Progress Physical Therapy,

---

[8] In fact, the trial court indicated that it would accept affidavits or deposition evidence and, upon application for good cause shown, live testimony, relevant to the issue of venue. Trial Court's Rule to Show Cause, 12/27/16.

- 11 -

treated one of [Plaintiff's counsel's] clients at a Philadelphia facility located at 3400 Aramingo Avenue, Suite 11, Philadelphia, PA." Plaintiff's Answer to Defendants' Preliminary Objections, 2/7/17, at ¶ 2. To support this averment, Medley attached a copy of office notes and medical records (an initial patient evaluation, and an invoice for services for this patient) to his supplemental memorandum of law in opposition to Defendants' preliminary objections. The services to this patient were rendered in February 2015, after Medley's November 2014 accident; the alleged patient and services rendered are unrelated to the instant action.

To challenge venue in Philadelphia County, Defendants attached an affidavit from Daniel Bianco, President of Dynamic Therapy Services, LLC., to their preliminary objections. In the affidavit, Bianco avers:

> I . . . am intimately familiar with the business operations of [Defendants]. Now and historically, the above entities have provided physical therapy services to the public primarily in the State of Delaware, and in several suburban counties outside of P[hiladelphia]. These services sometimes included transportation of patients to and from therapy facilities *all outside Philadelphia. None of these entities own property in, advertise in, or regularly conduct business in Philadelphia*.

Affidavit of Daniel Bianco, 11/30/16.

Defendants also deposed Bianco on April 7, 2017. At his deposition, Bianco explained that he became the president of Dynamic in 2013 and was in that role until the company was sold in February 2017. Deposition of Daniel

Bianco, 11/30/16, at 6-7.[9]   Bianco testified that, at the time of Medley's

accident, Dynamic had locations in Maryland, Delaware, Delaware County,

Pennsylvania, Berks County, Pennsylvania and Chester County, Pennsylvania.

*Id.* at 8.   Until it was bought by Pivot, Dynamic was owned by Lake Capital,

a private equity firm from Chicago.  *Id.* at 9.  As president of Dynamic, Bianco

ran all the day-to-day non-clinical operations and expansion, as well as the

Human Resources Department.  *Id.* at 10.  Bianco testified that Dynamic's

corporate office, located in Linwood, Delaware County, Pennsylvania, handles

the company's billing, collections and administrative functions.  *Id.* at 11.  At

its medical locations, Dynamic performs outpatient physical therapy, aquatic

therapy, and hand therapy.  *Id.*  In 2013, Dynamic sold Progress Physical

Therapy ("Progress") because it no longer wanted to do business in

Philadelphia.  *Id.* at 14-15.  Pursuant to a transaction service agreement that

expires in October 2018, Dynamic continues to do the billing, collection and

record requests for Progress on a shared-documentation network.  *Id.* 14, 16.

Progress reimburses Dynamic for their services and hours.   *Id.* at 17.

Dynamic has no employees that work at Progress; all Progress administrative

work is done through Dynamic's Linwood, PA office.  *Id.* at 21.

Based on the evidence of record, the trial court correctly concluded that

Defendants' contacts with Philadelphia were insufficient to establish venue in

that county.   At most, Dynamic's relationship with Progress consisted of

---

[9] At the time of his deposition, Bianco was the president of sales and marketing development for Pivot Physical Therapy ("Pivot").  *Id.* at 7.

tangential, incidental acts that were far from continuous or habitual. ***Purcell***, ***supra***. Defendants' association with Philadelphia was sufficient neither qualitatively or quantitatively to show that they regularly conduct business in Philadelphia County. ***Zampana-Berry***, ***supra***. Thus, the trial court correctly determined that venue properly lies in either Montgomery County (where Defendants regularly conduct business) or Berks County (where the accident occurred). ***See*** Pa.R.C.P. 1006; Pa.R.C.P. 2179. ***See also*** Defendants' Memorandum of Law in Support of Preliminary Objections, 11/29/16, at 3 ("Defendants maintain a regular place of business in Montgomery County, and were served process in Montgomery County. Venue clearly lies in either Berks or Montgomery County, not Philadelphia.").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/17/18</u>