NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2262
_____

ASHLEY PUGH; DANIEL PUGH, individually and as parents and
natural guardians of S.P.,
Appellants

v.

NORTHAMPTON HOSPITAL COMPANY, LLC, DBA Easton Hospital;
NORTHAMPTON CLINIC COMPANY, LLC, DBA Easton Area Obstetrics &
Gynecology Associates; DOUHA SABOUNI, M.D.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-20-cv-00630)
District Judge:  Honorable John M. Gallagher
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 5, 2024
_____

Before:  JORDAN, PHIPPS, and FREEMAN, *Circuit Judges*.

(Filed: July 30, 2024)
_____

OPINION[*]
_____

PHIPPS, *Circuit Judge*.

Individually and on behalf of their son, two parents sued a doctor, a practice group,

and a hospital for medical malpractice based on the boy's injuries allegedly resulting from

his delayed birth.  To prove that the injuries – primarily autism, diagnosed at age three, and

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

attention deficit hyperactivity disorder ('ADHD'), diagnosed at age eight – were caused by deficient medical care, the parents relied on a single expert witness. The defendants, however, moved *in limine* to exclude that expert's testimony, and without holding an evidentiary hearing, the District Court granted those *Daubert* motions. The defendants also moved for summary judgment, which the District Court granted against the parents because they lacked a qualifying expert opinion on causation. In this appeal, the parents challenge those rulings. For the reasons below, we will affirm the judgment of the District Court.

## FACTUAL BACKGROUND

In January 2014, Ashley Pugh was thirty-five weeks pregnant and in the early stages of labor when she was admitted to Easton Hospital in Easton, Pennsylvania. After she had fully dilated, her treating physician, Douha Sabouni, M.D., a member of Easton Area Obstetrics & Gynecology Associates, determined that she could attempt a vaginal delivery for the next two hours. If she did not deliver in that time, Sabouni planned to perform a caesarean section. After about two-and-a-half hours of attempted vaginal delivery, Sabouni ordered a C-section. That C-section did not take place; instead, about an hour and fifteen minutes later, Pugh vaginally delivered her child in great distress. The newborn had no detectable heart rate until twenty minutes after birth.

An MRI conducted when the child was five days old indicated that he had experienced neonatal encephalopathy caused by a lack of oxygen and blood flow to the brain. Later in his childhood, the boy was diagnosed with additional medical conditions: autism at age three and ADHD at age eight.

## PROCEDURAL HISTORY

In February 2020, Pugh and her husband, Daniel Pugh, both citizens of New Jersey, sued Sabouni, Easton Area Obstetrics & Gynecology Associates, and Easton Hospital,

2

none of whom is a citizen of New Jersey. The Pughs did so individually and on behalf of their son, and they claimed over $75,000 in damages based on allegations that their son's autism and other neurological deficiencies resulted from his delayed delivery. They relied on diversity jurisdiction to proceed with those claims in the District Court for the Eastern District of Pennsylvania. *See* 28 U.S.C. § 1332(a)(1); *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 202 (3d Cir. 2022).

Under Pennsylvania law, which provides the substantive standards for the Pughs' claims, *see Liggon-Redding v. Est. of Sugarman*, 659 F.3d 258, 262 (3d Cir. 2011), a plaintiff must prove certain elements of a medical malpractice claim through expert testimony, *see Hightower-Warren v. Silk*, 698 A.2d 52, 54 (Pa. 1997) ("[T]he plaintiff must [] provide a medical expert who will testify as to the elements of duty, breach[,] and causation."). One of the elements that must be established through expert testimony is causation – that a medical professional's breach of a duty of care caused the complained-of injury. *See Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003) ("The expert testimony requirement in a medical malpractice action means that a plaintiff must present medical expert testimony to establish that the care and treatment of the plaintiff by the defendant fell short of the required standard of care and that the breach proximately caused the plaintiff's injury."). In Pennsylvania, such causation has two sub-components: (i) general causation, *i.e.*, that "the acts or omissions complained of could cause the type of harm that the [plaintiff] suffered," and (ii) specific causation, *i.e.*, that "the acts complained of caused the actual harm suffered by the [plaintiff]." *Mitzelfelt v. Kamrin*, 584 A.2d 888, 894 (Pa. 1990). For each of those sub-components of causation, Pennsylvania law requires that the expert witness testify "to a reasonable degree of medical certainty." *Id.* at 892.

To provide expert testimony on causation, the Pughs retained one expert witness, Sarah Mulkey, M.D., Ph.D. Her initial expert report, which by rule, must provide notice of the opinions that an expert witness is prepared to offer at trial, *see* Fed. R. Civ. P. 26(a)(2)(B)(i), purported to address both general and specific causation. It first described an association between neonatal encephalopathy and autism. Then, after concluding that the child "had negative genetic testing for neurodevelopmental disorders that can be associated with autism" and "an absence of other distal factors such as his prenatal growth," the report identified the cause of the child's autism as neonatal encephalopathy. Expert Report of Sarah Mulkey, M.D., Ph.D., Sept. 29, 2021 (JA146). In a supplemental expert report, Mulkey expressed agreement with the diagnosis from the MRI that the child had suffered neonatal encephalopathy. And in a second supplemental report, Mulkey described autism as a "multi-factorial complex neurodevelopmental disorder the cause of which can relate to a genetic condition or a multitude of other risk factors." Second Suppl. Expert Report of Sarah Mulkey, M.D., Ph.D., July 30, 2022 (JA149).

During her deposition, Mulkey testified that neonatal encephalopathy increases the risk of autism. Defendants' counsel then specifically asked about general causation: "Does neonatal encephalopathy cause autism?" Mulkey Dep. 59:25–60:1 (JA187). Before Mulkey responded, the Pughs' attorney objected on the grounds that the question called for a legal conclusion. And while not formally instructing Mulkey not to answer the question, the Pughs' attorney announced, "I can't have her giving, you know, legal opinions on causation." *Id.* at 60:13–14 (JA187); *cf.* Fed. R. Civ. P. 30(c)(2) ("A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion [to terminate or limit the scope of

4

the deposition] under Rule 30(d)(3).").  Mulkey did not answer the general-causation question.  And at no other point during the deposition did Mulkey ever indicate that she held the opinion that neonatal encephalopathy could cause autism, nor did she set forth the principles and methods that led her to reach such a conclusion to a reasonable degree of medical certainty.

At the close of discovery, defendants filed *Daubert* motions to exclude Mulkey from testifying regarding causation.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  Without holding an evidentiary hearing, *see Pugh v. Cmty. Health Sys., Inc.*, 2023 WL 3361166, at *9 n.16 (E.D. Pa. May 10, 2023), the District Court granted the *Daubert* motions after concluding that Mulkey's general causation opinion was unreliable and that her "specific causation opinion that [the child's neonatal encephalopathy] caused his development of autism rests on the assumption [that neonatal encephalopathy] can cause autism," *id.* at *13.

The defendants also moved for summary judgment on the grounds that the Pughs had not demonstrated an essential element of their case: expert testimony on causation.  With the benefit of supplemental briefing following the rulings on the *Daubert* motions, the District Court entered summary judgment against the Pughs for failing to produce expert testimony on causation.  *See Pugh v. Cmty. Health Sys., Inc.*, 681 F. Supp. 3d 416, 423, 446 (E.D. Pa. 2023).

Through a timely notice of appeal, the Pughs invoked this Court's appellate jurisdiction to challenge the District Court's rulings.  *See* 28 U.S.C. § 1291; Fed. R. App. P. 4(a)(1)(A); *see also In re Westinghouse Sec. Litig.*, 90 F.3d 696, 706 (3d Cir. 1996) ("Under the 'merger rule,' prior interlocutory orders merge with the final judgment in a

case, and the interlocutory orders (to the extent that they affect the final judgment) may be reviewed on appeal from the final order.").

## DISCUSSION

The Pughs now present three challenges to the District Court's rulings. They argue that the District Court abused its discretion by refusing to hold an evidentiary hearing to evaluate the *Daubert* motions. They contend that the District Court erred in excluding Mulkey's testimony on causation. And they assert that the District Court erred in granting summary judgment. None of those succeeds.

### A. The District Court Did Not Abuse Its Discretion by Not Conducting a *Daubert* Hearing.

The Pughs argue that the District Court abused its discretion by declining to hold an evidentiary hearing on the *Daubert* challenges. *Cf. Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999) (explaining that a hearing is "not [] required whenever a *Daubert* objection is raised to a proffer of expert evidence" and that "[w]hether to hold one rests in the sound discretion of the district court"). But a proponent of expert testimony must establish how such a hearing would advance his position, *see Oddi v. Ford Motor Co.*, 234 F.3d 136, 153–54 (3d Cir. 2000), and the Pughs did not do so. Moreover, any such evidentiary hearing on general causation would have unfairly surprised the defendants because the Pughs' counsel had not permitted Mulkey to testify to general causation at her deposition. Thus, the District Court was within the bounds of its sound discretion to refrain from holding a hearing.

### B. The District Court Did Not Abuse Its Discretion by Excluding Mulkey's Causation Opinion.

The Pughs also attack the order excluding Mulkey's opinion on causation. But an expert witness must produce a report providing "a complete statement of all opinions the

witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). And here, Mulkey's opinion on general causation was not accompanied by an explanation of how it was "the product of reliable principles and methods." Fed. R. Evid. 702(c). The peer-reviewed medical literature that she relied on recognized a correlation between delayed birth and neonatal encephalopathy as well as an increased risk of neonatal encephalopathy from prolonged labor. That literature, however, did not go so far as to indicate causation to a reasonable degree of medical certainty, so Mulkey's opinions extended beyond peer-reviewed findings. Additionally, her expert reports did not explain the principles and methods that she used to infer general causation to a reasonable degree of medical certainty from the correlation and increased risk identified in the literature. That deficiency in her opinion on general causation also undermined her opinion on specific causation – that had the Pughs' child been delivered sooner, "he more likely than not would not have had [a] severe [form of neonatal encephalopathy] and would have had a much better and likely normal outcome." Second Suppl. Expert Report of Sarah Mulkey, M.D., Ph.D., July 30, 2022 (JA152). Because that opinion rested on the unsupported assumption that neonatal encephalopathy could cause autism, it too was not the result of reliable principles and methods. Thus, the District Court was within the exercise of its sound discretion to exclude Mulkey's proposed testimony on causation.[1] *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999) (applying an abuse-of-discretion review standard to a trial court's decision to admit or exclude expert testimony); *see also In re TMI Litig.*, 193 F.3d 613, 666 (3d Cir. 1999) ("[The Court] do[es] not interfere with the District Court's

_____

[1] If Mulkey had explained the principles and methods used to support her causation opinions at her deposition, the District Court, subject potentially to the good-cause standard for modifying scheduling orders, *see* Fed. R. Civ. P. 16(b)(4), would have had discretion to permit another supplemental report formalizing those explanations as well as responsive accommodations to the other parties, such as an additional deposition of Mulkey and leave to produce a rebuttal expert.

7

exercise of discretion 'unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" (quoting *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 127 (3d Cir. 1993))).

### C.     The District Court Correctly Granted Summary Judgment.

The Pughs contest the entry of summary judgment against their claims.  But to survive summary judgment, a non-moving party must make "a showing sufficient to establish the existence of an element essential to that party's case . . . on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Mall Chevrolet, Inc. v. Gen. Motors LLC*, 99 F.4th 622, 630 (3d Cir. 2024).  On *de novo* review, without the causation opinion from Mulkey, the Pughs failed to make such a showing for that element.  In aggregate, the Pughs' other experts concluded that the child suffered neonatal encephalopathy and that he had ADHD and autism, but they did not causally connect those conditions.  Thus, because the Pughs did not demonstrate the potential to offer admissible expert testimony on causation, the District Court correctly entered summary judgment against their medical malpractice claims.

**\* \* \***

For these reasons, we will affirm the judgment of the District Court.